# IN THE UNITED STATE DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SPINA, in his individual capacity and derivatively,<br><br>    Plaintiff,<br><br>  vs.<br><br>REFRIGERATION SERVICE AND ENGINEERING, INC.; ROBERT E. HEPP III; CYNTHIA A. FITZGERALD-HEPP, and KENNETH C. PHILO II,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 2:14-cv-04230-RK |

## PLAINTIFF'S MOTION FOR JUDICIAL SUPERVISION OF DISSOLUTION, OR, IN THE ALTERNATIVE, APPOINTMENT OF A RECEIVER OR CUSTODIAN

Plaintiff Thomas A. Spina ("Plaintiff" or "Spina"), through his undersigned counsel, makes the following Motion for Judicial Supervision of Dissolution, or, in the Alternative, Appointment of a Receiver or Custodian ("Motion"), to oversee the dissolution and liquidation of Defendant Refrigeration Service and Engineering, Inc. ("RSE").

**Factual Background.**

  1. By vote of Defendants Robert Hepp ("R. Hepp"), Cynthia Fitzgerald-Hepp ("C. Hepp") and Kenneth Philo ("Philo") (collectively, the "Defendant Controlling Shareholders") at a meeting of shareholders held on July 12, 2014,

Defendant RSE commenced a voluntary dissolution and liquidation of its assets. The vote was held after this litigation was underway in state court, and a mere forty-eight (48) hours before this Court obtained jurisdiction of this matter by notice of removal, filed on behalf of all Defendants.

2. Plaintiff, a shareholder in RSE, voted against that action, believing that it was intended to evade this Court's ability to adjudicate this matter and provide appropriate relief to the parties.

3. This Motion seeks an order implementing judicial supervision of that liquidation pursuant to 15 Pa.C.S. §§ 104, 1791 and 1793, to ensure that the assets of RSE are protected from misappropriation by the Defendant Controlling Shareholders.

4. RSE is the surviving company following a merger in December, 2011, with Industrial Refrigeration and Engineering, Inc. ("IRE") (the "Merger").

5. IRE was likewise a Pennsylvania corporation, and was owned 33-1/3% by Plaintiff immediately before the Merger.

6. The Merger of IRE into RSE was effective on December 29, 2011. As a result of the Merger, Plaintiff became and remains the owner of thirty percent (30%) of the issued and outstanding common voting shares of Defendant RSE.

7. Defendant R. Hepp owns thirty percent (30%), Defendant C. Hepp owns ten percent (10%), and Defendant Philo owns thirty percent (30%) of the

issued and outstanding common voting shares of Defendant RSE (that is, the Defendant Controlling Shareholders own 70% of the voting shares of RSE).

8.   According to calculations performed by the Defendant Controlling Shareholders, the value of RSE and IRE, operated as a single concern immediately before the Merger, was $2.2 million, and its value immediately after the Merger was likewise $2.2 million.

9.   Between the end of December, 2011, when the Merger became effective, and May 29, 2014 (the date on which this action was initiated by Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania), RSE experienced strong sales growth and profitability.  As of May 29, 2014, RSE was worth substantially more than $2.2 million.

10.   On or about May 8, 2014, Defendants R. Hepp and C. Hepp, without consulting Plaintiff or any other shareholder of RSE, reached an agreement in principle with Stellar Refrigeration Services, Inc., of Jacksonville, Florida ("Stellar"), to sell all of RSE's assets, exclusive of cash and accounts receivable, to Stellar for $475,000, payable over three years.  That agreement in principle was reduced to writing.  A copy of the contract between RSE and Stellar for the sale of assets (the "Sale of Assets Agreement") is attached hereto as Exhibit A.

11.   By means of a putative Notice of Special Meeting of Shareholders dated May 8, 2014, the Defendants advised Plaintiff that Defendants would hold a

shareholders meeting on May 19, 2014.  Pursuant to 15 Pa.C.S. § 1574, Plaintiff notified RSE and the other Defendants that he elected to dissent from any decision to sell assets of RSE, pursuant to the Sale of Assets Agreement or otherwise.  A copy of said notice is attached hereto as Exhibit B.

12.  A shareholders' meeting to consider the sale of assets to Stellar was, in fact, held on May 19, 2014, and the sale was approved, over Plaintiff's votes in opposition.

13.  Shortly after the meeting, the Defendants shut down Plaintiff's email account with RSE and instructed him not to come into the office, citing his vote against the sale of assets as the reason for their actions.  At that point, Plaintiff sought and accepted employment with another refrigeration contracting company servicing the Philadelphia area.  Plaintiff had no reason or intention to leave RSE before the sale of assets was approved by the Defendant Controlling Shareholders.

14.  At the time of the shareholders' purported approval of the sale of substantially all of the assets of RSE (other than cash or receivables) for $475,000 pursuant to the Sale of Assets Agreement, RSE was a thriving business with gross annual revenues of more than nine million dollars, accounts receivable of more than two million dollars, and substantial reserves of cash.

15.  Moreover, on May 14, 2014 (prior to the shareholders' meeting on May 19, 2014), Plaintiff offered $500,000 for the same assets to be purchased by

4

Stellar, on better terms – Plaintiff, unlike Stellar, was not proposing to pay in installments. Plaintiff's offer was rejected by RSE, at the instance and insistence of the Defendant Controlling Shareholders. Copies of Plaintiff's offer, Defendants' responses and related correspondence are attached hereto as Exhibit C.

16. All of the Defendant Controlling Shareholders signed employment agreements with Stellar, and are now working for Stellar. In violation of their fiduciary duties as controlling shareholders in a close corporation, the Defendant Controlling Shareholders diverted consideration that Stellar was willing to pay for RSE's assets. On information and belief, the Defendant Controlling Shareholders negotiated, instead, for the payment of large guaranteed sums to the Defendant Controlling Shareholders as part of employment agreements with Stellar.[1]

17. Additionally, the Defendant Controlling Shareholders' rejection of an offer from Plaintiff for the purchase of assets that was economically superior to the offer made by Stellar demonstrated, fairly conclusively, that the Defendant Controlling Shareholders were more interested in protecting the value of their side deals with Stellar than they were in obtaining fair value for RSE's assets.

---

[1] Plaintiff demanded that each Individual Defendant disclose the terms of his or her contemplated employment agreement with Stellar. All refused.

5

18.   Stellar, in turn, was not concerned with the apportionment of the consideration among assets and employee services, so long as it obtained RSE's going concern value in exchange for the total consideration to be tendered by Stellar.

19.   To determine the precise arrangements that the Defendants had made with Stellar, and to determine the substance of the negotiations that led to the deal, Plaintiff formally demanded to inspect corporate records of RSE, as is his indisputable right as a shareholder under 15 Pa.C.S. § 1508.  In clear contempt of Pennsylvania law, RSE and the Defendant Controlling Shareholders refused, and continue to refuse, Plaintiff's request.  Plaintiff's demand, RSE's response and related correspondence are attached hereto as Exhibit D.

20.   Both the Defendant Controlling Shareholders and Stellar were, and are, well aware, that the going concern value of RSE is well in excess of $475,000.  When the Plaintiff filed this action in state court to assert claims arising from that sale, the Defendant Controlling Shareholders and Stellar, recognizing the legal vulnerability of their sham Sale of Assets Agreement, decided to cancel their agreement and adopt a different subterfuge.

21.   On July 12, 2014, while this litigation was pending in state court and two (2) days before they removed the action to federal court, the Defendant Controlling Shareholders adopted their resolution to dissolve RSE.  Plaintiff voted

in opposition. The Defendants' resolution is attached hereto as Exhibit E. That resolution, as it terms *expressly recited*, was designed to defeat Plaintiff's dissenter's rights under Pennsylvania law. [2]

22. The resolution, as approved, contains provisions which are egregiously unfair and oppressive to Plaintiff under the present circumstances. The resolution approving the putative dissolution of RSE (i) grants Defendant R. Hepp "the power and authority to take the actions *he deems necessary* to wind-up the affairs of the Corporation . . . without further Board or shareholder approval," (ii) grants Defendant R. Hepp "full power and authority to sell the assets and distribute the net proceeds of the Corporation in any lawful manner *he deems appropriate*," (iii) provides that "the President [Defendant R. Hepp] *may modify this Plan*," and (iv) provides that "[t]he type (cash or other assets), timing, and any amounts of any such distributions will be made *as the Board may determine in its absolute discretion*" (all emphasis added).

23. Thus, the Defendant Controlling Shareholders (all members of the Board) may attempt, for example, to distribute accounts receivable of questionable value to Plaintiff, while distributing cash to themselves "in [their] absolute discretion."

---

[2] It is not unlawful to structure a merger, consolidation or sale of assets to avoid dissenters' rights, 15 Pa.C.S. § 1105, but that presumption, by its terms, does not extend to dissolutions.

24. Since the shareholders' meeting at which the dissolution was putatively approved, Plaintiff has learned that various employees of RSE other than the Defendant Controlling Shareholders have begun work with Stellar, or will begin work with Stellar shortly. The willingness of the Defendant Controlling Shareholders to give up and not to sell and exploit the going concern value of RSE is directly attributable to the fact that each such Defendant expects to benefit from such going concern value in the form of compensation from Stellar.

25. Both Stellar and the Defendant Controlling Shareholders have publicly announced that Stellar has acquired the business of RSE (notwithstanding that the Sale of-Assets Agreement was purportedly nullified). A copy of Stellar's announcement is attached hereto as Exhibit F, and a copy of RSE's announcement, signed by Defendant R. Hepp as Stellar's General Manager, Northeaster Division, is attached hereto as Exhibit G.

26. Neither of such announcements has been modified or withdrawn since (i) the decision not to close the "sale-of-assets agreement" or (ii) the decision to dissolve and liquidate RSE. Thus, it is clear that Stellar and the Defendant Controlling Shareholders want the market to believe that RSE has now become a part of Stellar.

27. Unless the Court undertakes to supervise the liquidation of RSE, Defendant R. Hepp will have every incentive to sell assets of RSE, including

customer accounts, fixed assets, tools and vehicles, to Stellar for inadequate consideration, to boost his standing with his new employer.

28.   In selling assets to Stellar, Defendant R. Hepp will do so without any apparent concern that RSE will be obliged to compensate Plaintiff fairly for his interests in those assets, as embodied in his statutory dissenter's rights, because, as the Defendant Controlling Shareholders recite in their resolution approving the dissolution, "the Corporation deems the prior dissenters' rights notice . . . a nullity and of no further effect."

29.   Throughout the period between the 2011 Merger of IRE and RSE, and the negotiation of the Sale of Assets Agreement, Defendants R. Hepp and C. Hepp, without the knowledge or approval of any other shareholder of RSE, used substantial cash and other assets of RSE to pay personal expenses, such as home repair and remodeling.  That use of RSE's property wasted corporate assets, was *ultra vires*, and violated Pennsylvania law.

30.   Defendant R. Hepp has demonstrated that he has little, if any, reluctance to use the assets of RSE for his personal benefit, and will do so again, in his role as liquidator, if given the chance.

31.   The great and imminent risk to Plaintiff is that R. Hepp will seek to benefit his new employer through asset transfers from RSE to Stellar for less than adequate consideration, in derogation of the rights of the other shareholders.

32. Plaintiff has made an appropriate demand upon the Board of Directors to agree to judicial supervision of the putative dissolution, and that demand was rejected.

33. Defendant R. Hepp has thus declared, in effect, that he desires a dissolution of RSE only if he can control it without oversight from the Court. Defendant R. Hepp's refusal to agree to judicially-supervised dissolution is best explained by his desire to benefit Stellar, and by extension, to benefit himself disproportionately, through the dissolution process.

34. The acts of the Defendant Controlling Shareholders, as directors and persons in control of RSE, are illegal, oppressive and fraudulent and it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved under the supervision of the Court and/or a receiver or custodian appointed by the Court.

35. The assets of RSE are being misapplied and wasted, and it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved under the supervision of the Court and/or a receiver or custodian appointed by the Court.

**Legal Standards.**

**A.     Judicial Supervision of Dissolution and Liquidation.**

36.     As a Pennsylvania business corporation, and as a party to litigation now before this Court, Defendant RSE is subject to judicial supervision of its affairs, especially extraordinary action resulting from decisions of the Defendant Controlling Shareholders taken over Plaintiff's objection and opposition.

37.     Pennsylvania statutory law grants the Court all equitable powers necessary for the supervision and control of corporations:

> Except to the extent otherwise provided in this title in cases where a statutory remedy is provided by this title, the court shall have the powers of a court of equity or chancery insofar as those powers relate to the supervision and control of corporations and other associations.

15 Pa.C.S. § 104.  *See also Kelso Woods Ass'n, Inc. v. Swanson*, 692 A.2d 1132, 1135 (Pa.Cmwlth. 1997).

38.     Under Pennsylvania law, a court of competent jurisdiction has the plenary authority to enter orders governing the affairs of Pennsylvania corporations.  *In re Buse & Caldwell*, 195 A. 9, 11-12 (Pa. 1937); *Steinberg v. American Bantam Car Co.*, 76 F.Supp. 426, 437 (W.D. Pa. 1948).

39.     In addition, Subchapter G of the Pennsylvania Business Corporation Law, "Judicial Supervision of Corporate Action," provides, in relevant part (emphasis added):

11

> 1791. Corporate action subject to subchapter.
>
> GENERAL RULE – This subchapter shall apply to and the term "corporate action [which] . . . shall mean (2) [t]he taking of any action on any matter that is required under this subpart or . . . under the bylaws may be, submitted for action by the shareholders, directors or officers of a business corporation.
>
> 1793. Review of contested corporate action.
>
> (a) GENERAL RULE – Upon application of any person aggrieved by any corporate action, the court may hear and determine the validity of the corporate action.
>
> (b) POWERS AND PROCEDURES – *The court may make such orders in any case as may be just and proper* . . .

40. Supervision of dissolution and liquidation is specifically enumerated by the Business Corporation Law as a power and prerogative of the Court (*see* 15 Pa.C.S. § 1976). Additionally, Plaintiff seeks such supervision under Section 1976 derivatively, as part of his derivative claims on RSE's behalf.

41. The Court therefore has the ability to supervise the dissolution and liquidation of a Pennsylvania corporation in connection with a dispute, like this one, that is properly before the Court.[3]

42. Notably, "[t]he assets of a dissolved corporation constitute a trust fund for creditors and stockholders." *Heaney v. Riddle*, 23 A.2d 456, 458 (Pa. 1942).

43. Because Defendant R. Hepp has an interest in conveying assets at a discount to his new employer if the opportunity arises,[4] and because he has every

---

[3] Additionally, the Court may undertake judicial supervision of a party Defendant now before the Court (i.e., Defendant RSE) under Fed. R. Civ. P. 16(c)(2)(P) (orders facilitating the just disposition of the action), and the All Writs Act, 28 U.S.C. § 1651 (Court may issue writ or rule nisi necessary or appropriate in aid of its jurisdiction).

incentive to seek to disadvantage his fellow shareholder and litigation adversary (Plaintiff), R. Hepp is operating under a conflict of interest in acting as liquidator of RSE.

44. R. Hepp's obligation as a fiduciary to place the interests of creditors and stockholders before his own interests is manifestly compromised. Judicial supervision will help ensure that RSE is liquidated properly and without favoritism to any party.[5]

45. The proposed Order submitted herewith would require that the liquidator report periodically to all other parties concerning all proposed sales or transfers of any asset of RSE, as well as all other actions taken in connection with the dissolution and liquidation, and, if any party objects to any such action, the liquidator must await the approval of the Court before effectuating such action.

46. Similar approval would be required before the cash obtained in liquidation, net of liabilities, is distributed to shareholders, including Plaintiff.

---

[4] Plaintiff's Complaint alleges that Defendant R. Hepp and the other Defendant Controlling Shareholders attempted to sell substantially all of the assets of RSE (having a value of approximately $2.2 million) to Stellar for $475,000, knowing that their own compensation from Stellar would ultimately be enhanced by the fact that they (the Defendant Controlling Shareholders) would be managing very valuable assets on Stellar's behalf (the "old" RSE was to become Stellar's regional operation for the Philadelphia area, managed by Defendant R. Hepp). The Defendant Controlling Shareholders were either guaranteed to receive or fully expected to receive rich compensation in exchange for transferring control of RSE's assets for inadequate consideration.

[5] Plaintiff consents to such supervision being exercised by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), if the Court wishes to propose that possibility to the parties.

**B.     Appointment of a Receiver or Custodian.**

47.    In the alternative, Plaintiff seeks appointment of a liquidating receiver for Defendant RSE (per Fed. R. Civ. P. 66 and 15 Pa.C.S. §§ 1981(a)(2) and 1985), or appointment of a custodian for Defendant RSE (per Fed. R. Civ. P. 66 and 15 Pa.C.S. §§ 1767(a)(2)).

48.    The Third Circuit has made clear that a district court may, under appropriate circumstances, appoint a receiver at the behest of a shareholder to wind up the affairs of the corporation in which that shareholder has an interest.  *See Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969).

49.    In this (perhaps unusual) case, the parties agree that a liquidation of RSE, followed by a distribution to shareholders, is necessary and appropriate, thus satisfying the most significant requirement for appointment of a receiver.  The question now before the Court is whether a party Defendant to litigation should be entitled to approve and conduct a liquidation of another Defendant's assets, and remain in charge of decisions affecting his adversary's interests, without Court supervision.

50.    Moreover, the Defendants purported to approve the dissolution and liquidation after this matter was in litigation and just before they filed their notice of removal.  Defendants' action in approving the dissolution of a party Defendant

14

was taken in utter derogation of this Court's responsibility to manage and supervise litigation before it.

51.   Federal courts consider a variety of factors when deciding whether to appoint a receiver pursuant to Fed. R. Civ. P. 66 in a pending matter.  Those factors include (1) whether the party seeking the appointment has a valid claim, (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendants, (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered, (4) whether legal remedies are inadequate, (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment, (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property, and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.  13 James Wm. Moore, et al., *Moore's Federal Practice*, § 66.04[2][b] (3d ed. 2008).

52.   Plaintiff's application meets all of those standards.  The validity of Plaintiff's claim, and the fraudulent nature of Defendant's conduct, are established, *prima facie*, by the fact that Defendants seek to dissolve the company for the express purpose of defeating Plaintiff's dissenter's rights (see 15 Pa.C.S. § 1574), and by moving to sell substantially all of the assets of a Defendant in a matter before this Court, without first having sought this Court's permission.  The

property of RSE is threatened with diminishment in value because Defendant R. Hepp, now an employee of Stellar, has strong motivations to sell RSE's property to Stellar for less than its full worth (R. Hepp owns only 30% of the shares of RSE, but will be in charge of Stellar's Philadelphia operation – his interest in Stellar is clearly more immediate than his interest as a 30% shareholder in RSE). Plaintiff has no adequate remedy at law, because once the assets are sold for less than adequate consideration, it is by no means certain that the Defendant Controlling Shareholders will be able to satisfy any resulting judgment in favor of Plaintiff. In sum, Plaintiff is likely to succeed on the merits, and his interests in RSE will be irreparably harmed if a receivership is not created. Creation of a receivership will ensure the orderly liquidation of RSE's assets, without favoritism toward any shareholder.

53. Plaintiff believes and avers that the cost to the corporation for a receiver's services in conducting the contemplated liquidation will be eminently reasonable in light of the amount of assets at issue.

54. The claims for breach of fiduciary duty, usurpation of corporate opportunities, and other wrongs asserted by Plaintiff (Counts VI through XXI of the Complaint) are asserted under state law and are properly before this Court under 28 U.S.C. § 1367. The Court has jurisdiction to entertain the present application.

**Relief Sought.**

55.  Plaintiff seeks, through the present Motion, to secure judicial assistance in winding up the affairs of Defendant RSE, including the sale of its property and the satisfaction of its liabilities.

56.  Plaintiff asks the Court to undertake judicial supervision of the dissolution and liquidation of RSE to ensure (i) that none of the assets of RSE are sold or otherwise transferred to Stellar, (ii) that no assets of RSE are sold or otherwise transferred to anyone for inadequate consideration, and (iii) that any ultimate distribution to shareholders of the net proceeds of the liquidation is fair to Plaintiff and respects his proportionate ownership interest in the company.

57.  To the extent necessary to the Court's resolution of the present Motion, Plaintiff respectfully requests that the Court convene an evidentiary hearing under Rule 43(c).

WHEREFORE, Plaintiff respectfully prays, pursuant to Fed. R. Civ. P. 16(c)(2)(P) and 15 Pa.C.S. § 1793(b), that the Court enter an Order (in the form accompanying this Motion or in such form as the Court directs) instituting Court supervision of said liquidation under the terms of said Order.  A proposed form of Order is submitted herewith.

                                      Respectfully submitted,

                                      LAW OFFICES OF HENRY IAN PASS

                                      By:  */s/ Henry I. Pass*
                                            Henry I. Pass, PA Atty. I.D. #21437
                                            Richard G. Tuttle, PA Atty. I.D. #28685
                                            3 Bala Plaza East, Suite 700A
                                            Bala Cynwyd, PA  19004
                                            (610) 660-8001 / (610) 660-8004 (fax)
                                            E-mail:  hip@hipesq.com
                                                            rtuttle@hipesq.com

Dated:  July 18, 2014                         *Attorneys for Plaintiff Thomas Spina*