IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SPINA, in his individual capacity and derivatively,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>REFRIGERATION SERVICE AND ENGINEERING, INC.; ROBERT E. HEPP III; CYNTHIA A. FITZGERALD-HEPP, and KENNETH C. PHILO II,<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>NO. 2:14-cv-04230-RK |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR JUDICIAL SUPERVISION
OF DISSOLUTION, OR, IN THE ALTERNATIVE,
APPOINTMENT OF A RECEIVER OR CUSTODIAN**

　　Plaintiff Thomas A. Spina ("Plaintiff" or "Spina"), through his undersigned counsel, submits this Memorandum of Law in support of his Motion for Judicial Supervision of Dissolution, or, in the Alternative, Appointment of a Receiver or Custodian ("Motion").

**Factual Background.**

　　The facts giving rise to the present Motion are set forth in the Motion itself, and Plaintiff therefore only summarizes them in this Memorandum.

By vote of the Defendant Controlling Shareholders (as hereafter defined) held on July 12, 2014, after this litigation was underway in state court, and a mere forty-eight (48) hours before this Court obtained jurisdiction of this matter by notice of removal filed on behalf of all Defendants, Defendant Refrigeration Service and Engineering, Inc. ("RSE") commenced a voluntary dissolution and liquidation of its assets.  Plaintiff, a shareholder in RSE, voted against that action, believing that it was intended to evade this Court's ability to adjudicate this matter and provide appropriate relief to the parties. This Motion seeks an order implementing judicial supervision of that liquidation pursuant to 15 Pa.C.S. §§ 104, 1791 and 1793, to ensure that the assets of RSE are protected from misappropriation and self-dealing by Defendants Robert E. Hepp III ("R. Hepp"), Cynthia A. Fitzgerald-Hepp ("C. Hepp") and Kenneth Philo ("Philo") (collectively, the "Defendant Controlling Shareholders").

RSE is the surviving company following a merger in December, 2011, with Industrial Refrigeration and Engineering, Inc. ("IRE") (the "Merger").  IRE, like RSE, was a Pennsylvania corporation, and was owned 33 1/3% by Plaintiff immediately before the Merger.  The Merger of IRE into RSE was effective on December 29, 2011.  As a result of the Merger, Plaintiff became and remains the owner of thirty percent (30%) of the issued and outstanding common voting shares of RSE.

The ascribed combined value of RSE and IRE, operated as a single concern immediately before the Merger, was approximately $2.2 million (based upon calculations performed by the Defendants), and its value immediately after the Merger was likewise described by the Defendants as $2.2 million.[1]

Between the end of December, 2011, when the Merger became effective, and May 29, 2014 (the date on which this action was initiated by Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania), RSE experienced strong sales growth and profitability. As of May 29, 2014, RSE as a going concern was worth substantially more than $2.2 million.

On or about May 8, 2014, Defendants R. Hepp and C. Hepp, without consulting Plaintiff or any other shareholder of RSE, reached an agreement in principle with Stellar Refrigeration Services, Inc., of Jacksonville, Florida ("Stellar"), to sell all of RSE's assets, exclusive of cash and accounts receivable, to Stellar for $475,000, payable over three years. That agreement in principle was reduced to writing. A copy of the contract between RSE and Stellar for the sale of assets (the "Sale of Assets Agreement") is attached hereto as Exhibit A.

---

[1] The valuations of RSE and IRE were based, in part, upon financial information provided by Defendants R. Hepp and C. Hepp to Plaintiff that were fraught with material misrepresentations and omissions, and are the focus of Plaintiff's federal and state securities claims alleged in Counts I-VI of the Complaint in this action.

By means of a putative Notice of Special Meeting of Shareholders dated May 8, 2014, Defendants advised Plaintiff that Defendants would hold a shareholders meeting on May 19, 2014.  Pursuant to 15 Pa.C.S. § 1574, Plaintiff notified RSE and the other Defendants that he elected to dissent from any decision to sell RSE's assets, pursuant to the Sale of Assets Agreement or otherwise.  A copy of said notice invoking Plaintiff's dissenters' rights is attached hereto as Exhibit B.

A shareholders' meeting to consider the sale of assets to Stellar was, in fact, held on May 19, 2014, and the sale was approved, over Plaintiff's votes in opposition.  Shortly after the meeting, the Defendants shut down Plaintiff's email account with RSE, and instructed him not to come into the office, citing his vote against the sale of assets as the reason for its actions.  At that point, Plaintiff sought and accepted employment with another refrigeration contracting company servicing the Philadelphia area.  Plaintiff had no reason or intention to leave RSE before the sale of assets was approved by the Defendant Controlling Shareholders.

At the time of the shareholders' purported approval of the sale of substantially all of the assets of RSE (other than cash or receivables) for $475,000 pursuant to the Sale of Assets Agreement, RSE was a thriving business with gross annual revenues of more than nine million dollars, accounts receivable and work in process of more than two million dollars, and substantial reserves of cash.

Moreover, on May 14, 2014 (prior to the shareholders' meeting on May 19, 2014), Plaintiff offered $500,000 for the same assets to be purchased by Stellar, and on better terms – Plaintiff, unlike Stellar, was not proposing payment in installments. Plaintiff's offer was rejected by RSE, at the instance and insistence of the Defendant Controlling Shareholders. See Plaintiff's offer, Defendants' responses and related correspondence attached hereto as Exhibit C.

On information and belief, all of the Defendant Controlling Shareholders signed employment agreements with Stellar and are now working for Stellar. In violation of their duties as controlling shareholders in a close corporation, the Defendant Controlling Shareholders diverted consideration that Stellar was willing to pay for RSE's assets. On information and belief, the Defendant Controlling Shareholders negotiated, instead, for the payment of large guaranteed sums to the Defendant Controlling Shareholders as part of employment or other agreements with Stellar.[2] Additionally, their rejection of an offer from Plaintiff for the purchase of assets that was demonstrably economically superior to the offer made by Stellar demonstrated, fairly conclusively, that the Defendant Controlling Shareholders were more interested in protecting the value of their side deals with Stellar than they were in obtaining fair value for RSE's assets.

---

[2] Plaintiff demanded that each Individual Defendant disclose the terms of his or her contemplated employment agreement with Stellar. All refused.

Stellar, in turn, was not concerned with the apportionment of the consideration among assets and employee services, so long as it obtained RSE's going concern value in exchange for the total consideration to be tendered by Stellar.

To determine the precise arrangements that the Defendants had made with Stellar, and to determine the substance of the negotiations that led to the deal, Plaintiff formally demanded to inspect corporate records of RSE, as is his indisputable right as a shareholder under 15 Pa.C.S. § 1508. In clear contempt of Pennsylvania law, RSE and the Defendant Controlling Shareholders refused, and continue to refuse, Plaintiff's request. See Plaintiff's demand, RSE's response and related correspondence attached hereto as Exhibit D.

Both the Defendant Controlling Shareholders and Stellar were, and are, well aware, that the going concern value of RSE is well in excess of $475,000. When the Plaintiff filed this action in state court to assert claims arising from that sale, the Defendant Shareholders and Stellar, recognizing the legal vulnerability of their sham Sale of Assets Agreement, decided to cancel their agreement and adopt a different subterfuge.

On July 12, 2014, while this litigation was pending in state court and two days before they removed the action to federal court, the Defendant Controlling Shareholders adopted their resolution to dissolve RSE. Plaintiff voted in

opposition. The Defendants' resolution is attached hereto as Exhibit E. That resolution, as it terms *expressly recited*, was designed to defeat Plaintiff's dissenter's rights under Pennsylvania law.[3]

The resolution, as approved, contains provisions which are egregiously unfair and oppressive to Plaintiff under present circumstance, which is not surprising given that the Defendant Shareholders saw themselves as being able to vote adverse consequences upon their litigation adversary. For example, the resolution (i) grants Defendant R. Hepp "the power and authority to take the actions *he deems necessary* to wind-up the affairs of the Corporation . . . without further Board or shareholder approval," (ii) grants Defendant R. Hepp "full power and authority to sell the assets and distribute the net proceeds of the Corporation in any lawful manner *he deems appropriate*," (iii) provides that "the President [Defendant R. Hepp] *may modify this Plan*," and (iv) provides that "[t]he type (cash or other assets), timing, and any amounts of any . . . distributions [to shareholders] will be made *as the Board may determine in its absolute discretion*"[4] (all emphasis added). Fairness to the Plaintiff was not on the agenda.

---

[3] It is not unlawful to structure a merger, consolidation or sale of assets to avoid dissenters' rights, 15 Pa.C.S. § 1105, but that presumption, by its terms, does not extend to dissolutions.

[4] Thus, the Defendant Controlling Shareholders (all members of the Board) may attempt, for example, to distribute accounts receivable of questionable value to Plaintiff, while distributing cash to themselves "in [their] absolute discretion." The potential for abuse is manifest.

Since the shareholders' meeting at which the dissolution was putatively approved, Plaintiff has learned that R. Hepp, Philo and various other employees of RSE have begun work with Stellar, or will begin work with Stellar shortly. The willingness of the Defendant Controlling Shareholders to give up and not to sell and exploit the going concern value of RSE is directly attributable to the fact that each such Defendant expects to benefit from such going concern value in the form of compensation from Stellar.

Both Stellar and the Defendant Controlling Shareholders have publicly announced that Stellar has acquired the business of RSE (notwithstanding that the sale-of-assets agreement was purportedly nullified). A copy of Stellar's announcement is attached hereto as Exhibit F, and a copy of RSE's announcement, signed by Defendant R. Hepp as Stellar's General Manager, Northeast Division, is attached hereto as Exhibit G. Neither of such announcements has been modified or withdrawn since (i) the decision not to close the "sale-of-assets agreement" or (ii) the decision to dissolve and liquidate RSE. Thus, it is clear that Stellar and the Defendant Controlling Shareholders want the market to believe that RSE has now become a part of Stellar.

Unless the Court undertakes to supervise the liquidation of RSE, Defendant R. Hepp will have every incentive to sell assets of RSE, including customer accounts, fixed assets, tools and vehicles, to Stellar for inadequate consideration, to

boost his standing with his new employer. In selling assets to Stellar, Defendant R. Hepp will do so without any apparent concern that RSE will be obliged to compensate Plaintiff fairly for his interests in those assets, as embodied in his statutory dissenter's rights, because, as the Defendant Controlling Shareholders recite in their resolution approving the dissolution, "the Corporation deems the prior dissenters' rights notice . . . a nullity and of no further effect."

As Plaintiff alleges in his Complaint, throughout the period between the 2011 Merger of IRE and RSE, and the negotiation of the Sale of Assets Agreement, Defendants R. Hepp and C. Hepp, without the knowledge or approval of any other shareholder of RSE, used substantial cash and other assets of RSE to pay personal expenses, such as home repair and remodeling. That use of RSE's property wasted corporate assets, was *ultra vires*, and violated Pennsylvania law.

Defendants R. Hepp and C. Hepp have demonstrated that they have little, if any, reluctance to use the assets of RSE for their personal benefit, and will do so again, through R. Hepp's role as liquidator, if given the chance. The great and imminent risk to Plaintiff is that R. Hepp will seek to benefit his new employer through asset transfers from RSE to Stellar for less than adequate consideration, in derogation of the rights of the other shareholders.

Plaintiff has made an appropriate demand upon the Board of Directors to agree to judicial supervision of the putative dissolution, and that demand was

rejected.  Defendant R. Hepp has thus declared, in effect, that he desires a dissolution of RSE only if he can control it without oversight from the Court. Defendant R. Hepp's refusal to agree to judicially-supervised dissolution is best explained by his desire to benefit Stellar, and by extension, to benefit himself disproportionately, through the dissolution and liquidation process.

The acts of the Defendant Controlling Shareholders, as directors and persons in control of RSE, are illegal, oppressive and fraudulent and it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved under the supervision of the Court and/or a receiver or custodian appointed by the Court.

**ARGUMENT.**

**A.    The Court has the power and ability to supervise the dissolution and liquidation of RSE to ensure that it is fair to all parties.**

As a Pennsylvania business corporation, and as a party to litigation now before this Court, Defendant RSE is subject to judicial supervision of its affairs.  In particular, the Court has clear authority to oversee extraordinary action resulting from decisions of the Defendant Controlling Shareholders taken over Plaintiff's objection and opposition.  Pennsylvania statutory law expressly grants the Court all equitable powers necessary for the supervision and control of Pennsylvania corporations:

> Except to the extent otherwise provided in this title in cases where a statutory remedy is provided by this title, the court shall have the powers of a court of equity or chancery insofar as those powers relate to the supervision and control of corporations and other associations.

15 Pa.C.S. § 104. *See also Kelso Woods Ass'n, Inc. v. Swanson*, 692 A.2d 1132, 1135 (Pa. Cmwlth. 1997). Under Pennsylvania law, a court of competent jurisdiction has long had plenary authority to enter orders governing the affairs of Pennsylvania corporations. *In re Buse & Caldwell*, 195 A. 9, 11-12 (Pa. 1937); *Steinberg v. American Bantam Car Co.*, 76 F.Supp. 426, 437 (W.D.Pa. 1948). That principle is codified not only at 15 Pa.C.S. § 104, *supra*, but also in Subchapter G of the Pennsylvania Business Corporation Law, "Judicial Supervision of Corporate Action," which provides, in relevant part (emphasis added):

> 1791. Corporate action subject to subchapter.
>
> GENERAL RULE – This subchapter shall apply to and the term "corporate action" [which] . . . shall mean . . . (2) [t]he taking of any action on any matter that is required under this subpart or . . . under the bylaws may be, submitted for action by the shareholders, directors or officers of a business corporation.
>
> 1793. Review of contested corporate action.
>
> (a)  GENERAL RULE – Upon application of any person aggrieved by any corporate action, the court may hear and determine the validity of the corporate action.
>
> (b)  POWERS AND PROCEDURES – *The court may make such orders in any case as may be just and proper* . . .

Supervision of dissolution and liquidation is specifically enumerated by the Business Corporation Law as a power and prerogative of the court (*see* 15 Pa.C.S. § 1976). Reading the relevant statutory provisions together, there is no reasonable question that the Court has the ability, upon application of an aggrieved shareholder such as Plaintiff, to supervise the dissolution and liquidation of a Pennsylvania corporation in connection with a dispute, like this one, that is properly before the Court.[5]

Of special importance, "[t]he assets of a dissolved corporation constitute a trust fund for creditors and stockholders." *Heaney v. Riddle*, 23 A.2d 456, 458 (Pa. 1942). Because Defendant R. Hepp has an interest in conveying assets at a discount to his new employer if the opportunity arises,[6] and because he has every incentive to seek to disadvantage his fellow shareholder and litigation adversary (Plaintiff), R. Hepp is operating under a conflict of interest in acting as the putative liquidator of RSE. His obligation as a fiduciary to place the interests of creditors

---

[5] Additionally, the Court may undertake judicial supervision of a party Defendant now before the Court (i.e., Defendant RSE) under Fed. R. Civ. P. 16(c)(2)(P) (pretrial orders facilitating the just disposition of the action), and the All Writs Act, 28 U.S.C. § 1651 (the Court may issue writ or rule nisi necessary or appropriate in aid of its jurisdiction).

[6] Plaintiff's Complaint alleges that Defendant R. Hepp and the other Defendant Controlling Shareholders attempted to sell substantially all of the assets of RSE (having a value of at least $2.2 million) to Stellar for $475,000, knowing that their own compensation or other consideration received from Stellar would ultimately be enhanced by the fact that they (the Defendant Controlling Shareholders) would be managing very valuable assets on Stellar's behalf (the "old" RSE was to become Stellar's regional operation for the Philadelphia area, managed by Defendant R. Hepp). The Defendant Controlling Shareholders were either guaranteed to receive or fully expected to receive rich compensation or other consideration in exchange for transferring control of RSE's assets for grossly inadequate consideration.

and stockholders before his own interests is manifestly compromised.  Judicial supervision will help ensure that RSE is liquidated properly and without favoritism to any party.

The relief that Plaintiff seeks through the present Motion is limited, but critical to ensuring that the dispute now before the Court is settled judicially, and not through the crude self-help that the Defendants are now attempting.  The proposed Order submitted herewith would require that the liquidator report periodically to all other parties concerning all proposed sales or transfers of any asset of RSE, as well as all other actions taken in connection with its dissolution and liquidation, and, if any party objects to any such action, the liquidator must await approval of the Court before effectuating any such sale or transfer.  Similar approval would be required before the cash or other property obtained in liquidation, net of liabilities, is distributed to shareholders, including Plaintiff.

Moreover, the particulars of the Court's Order are not as important, from the Plaintiff's perspective, as the need for judicial supervision generally.[7]  Judicial oversight will ensure that the process is fair to all stakeholders, and the liquidator will be held accountable to the Court and those other stakeholders in exercising the power over corporate assets that the liquidator will assume.

---

[7] Plaintiff consents to such supervision being exercised by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), if the Court wishes to propose that possibility to the parties.

**B.     Alternatively, the Court may, and should, appoint a receiver to wind up RSE's affairs, and, if necessary, appoint a custodian pending dissolution and liquidation.**

The Third Circuit has made clear that a district court may, under appropriate circumstances, appoint a receiver at the behest of a shareholder to wind up the affairs of the corporation in which that shareholder has an interest. See *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969).

Appointment of a receiver is governed, generally, by Fed. R. Civ. P. 66, which provides:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

In this (perhaps unusual) case, the parties agree that a liquidation of RSE, followed by a distribution of net assets to shareholders, is necessary and appropriate, thus satisfying the most significant requirement for appointment of a receiver. The question now before the Court is whether a party Defendant to litigation should be entitled to approve and conduct a liquidation of a Defendant's assets, and remain in charge of decisions affecting his adversary's interests, without Court supervision.

Federal courts consider a variety of factors when deciding whether to appoint a receiver pursuant to Fed. R. Civ. P. 66 in a pending matter. Those

14

factors include (1) whether the party seeking the appointment has a valid claim, (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendants, (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered, (4) whether legal remedies are inadequate, (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment, (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property, and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.  13 James Wm. Moore, et al., *Moore's Federal Practice*, § 66.04[2][b] (3d ed. 2008).[8]

Plaintiff's application clearly meets all of those standards.  The validity of Plaintiff's claim, and the fraudulent nature of Defendant's conduct, are established, *prima facie*, by the fact that Defendants seek to dissolve the company in response to pending litigation, and not for any legitimate business purpose.  The property of RSE is threatened with diminishment in value because Defendant R. Hepp, now an employee of Stellar, has strong motivations to sell RSE's property to Stellar for less than its full worth (R. Hepp owns only 30% of the shares of RSE, but will be in charge of Stellar's entire Philadelphia operation – his interest in compensation

---

[8] The substantive law of Pennsylvania may also inform the Court's discretion.  Under provisions of the Business Corporation Law, the Court may decree an involuntary dissolution where "corporate assets are being misapplied . . .  and it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved" (15 Pa.C.S. § 1981(a)(2)), and may "appoint a liquidating receiver" (15 Pa.C.S. § 1985) to supervise that dissolution.

from Stellar is manifestly more immediate than his residual interest in RSE). Plaintiff has no adequate remedy at law, because once the assets of RSE are sold to Stellar for less than adequate consideration, there may be no practical way to recoup his losses (it is by no means certain that the Defendant Controlling Shareholders will be able to satisfy any resulting judgment in favor of Plaintiff). In sum, Plaintiff is likely to succeed on the merits, and his interests in RSE will be irreparably harmed if a receivership is not created. Creation of a receivership will ensure the orderly liquidation of RSE's assets, without favoritism toward any shareholder.

Liquidation of a relatively small corporation that has largely ceased operations should not be a complicated process, and should not require an unusual commitment of time on the part of a receiver. Plaintiff has no objection, as a shareholder, to the receiver's being compensated from corporate assets of RSE (although, as noted, Plaintiff prefers judicial supervision to a receivership).

If the Court were to conclude that dissolution and liquidation of RSE cannot properly be carried out, or will not be fair to litigants, shareholders or creditors, while the litigation is pending, the Court has a further option, namely, appointment of a custodian for RSE pursuant to 15 Pa.C.S. § 1767(a)(2). A custodian appointed by the Court would control the affairs of the corporation and would have all of the

powers of a receiver (15 Pa.C.S. § 1767(c)), but would not have the right or ability to proceed with liquidation absent further order from the Court (*id.*).

**Relief Sought.**

Plaintiff seeks, through the present Motion, to secure judicial assistance in winding up the affairs of Defendant RSE, including the sale of its property and the satisfaction of its liabilities.

Plaintiff asks the Court to undertake judicial supervision of the dissolution and liquidation of RSE to ensure (i) that none of the assets of RSE are sold or otherwise transferred to Stellar, (ii) that no assets of RSE are sold or otherwise transferred to anyone for inadequate consideration, and (iii) that any ultimate distribution to shareholders of the net proceeds of the liquidation is fair to Plaintiff and respects his proportionate ownership interest in the company.

To the extent necessary to the Court's resolution of the present Motion, Plaintiff respectfully requests that the Court convene an evidentiary hearing under Rule 43(c).

WHEREFORE, Plaintiff respectfully prays, pursuant to Fed. R. Civ. P. 16(c)(2)(P) and 15 Pa.C.S. § 1793(b), that the Court enter an Order (in the form accompanying this Motion or in such form as the Court directs) instituting Court supervision of said liquidation under the terms of said Order. A proposed form of Order is submitted herewith.

                Respectfully submitted,

                LAW OFFICES OF HENRY IAN PASS

                By: */s/ Henry I. Pass*
                      Henry I. Pass, PA Atty. I.D. #21437
                      Richard G. Tuttle, PA Atty. I.D. #28685
                      3 Bala Plaza East, Suite 700A
                      Bala Cynwyd, PA  19004
                      (610) 660-8001
                      (610) 660-8004 (fax)
                      E-mail:  hip@hipesq.com
                              rtuttle@hipesq.com

Dated:  July 18, 2014                *Attorneys for Plaintiff Thomas Spina*