**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Thomas Spina, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 14-cv-04230 |
| v. | : | |
| | : | |
| Refrigeration Service and Engineering, Inc., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION TO DISMISS

Dated: July 18, 2014

**JACOBS LAW GROUP, PC**
Neal A Jacobs, Esq.  I.D. #41918
Richard E. Miller, Esq. I.D. #46451
2005 Market Street, Suite 1120
Philadelphia, Pa. 19103
Phone: (215) 569-9701

Attorneys for Defendant, Refrigeration,
Service and Engineering, Inc.

## TABLE OF CONTENTS

**Page**

Introduction ........................................................................................... 1

Factual Background ............................................................................... 2

The Complaint ...................................................................................... 7

The Factual Allegation Regarding the Merger ..................................... 11

Legal Discussion .................................................................................. 16

   A.   Standard of Review and Pleading Requirements ........................ 16

      1.   Rule 12(b)(6) Standard of Review .................................... 16

      2.   Rule 9(b) Pleading Requirements ..................................... 18

      3.   The PSLRA Pleading Requirements ................................. 19

      Claims Allegedly Arising Out of the Merger (Counts I – VI) ... 23

   B.   Count I – Violation of 15 U.S.C. §78j and Rule 10b-5 ............... 23

      1.   Elements of a §10b Securities Fraud Claim ...................... 24

      Element No.1 – Material Misrepresentation or Omission ....... 25

      Element No.2 – Scienter ......................................................... 26

      Element No.3 – In Connection With the Sale of a Security ..... 27

      Element Nos.4 and 5 – Causation ........................................... 27

         a)   Loss Causation (Proximate Cause) ......................... 28

         b)   Transaction Causation (Reliance) ........................... 30

      Element No.6 – Economic Loss .............................................. 32

   C.   Count II – Violation of 15 U.S.C. §78t(a) (Control Person Liability) ... 32

   D.   Count III – Violation of the Pennsylvania Securities Act ........... 33

   E.   Count IV - Violation of the Pennsylvania Securities Act (Control Person) ... 35

   F.   Statute of Limitations – Federal Securities Claims ................... 36

G.  Statute of Limitations – Pennsylvania Securities Claims                    37

H.  Count V – Fraud and Intentional Misrepresentation                         37

I.  Count VI – Negligent Misrepresentation                                    39

    <u>Counts Characterized as Derivative Shareholder Claims (Counts VII – XVIII)</u>   41

    1.  Pre-Litigation Requirements for Derivative Claims                    41

    2.  Pleading Requirements for Derivative Claims                         42

J.  Count VII – Unjust Enrichment                                             42

K.  Count VIII – Corporate Waste                                             43

L.  Count XIX – *Ultra Vires* Undertakings                                    44

M.  Count X – Diversion and Usurpation of Corporate Opportunity              45

N.  Count XI – Self-Dealing                                                   46

O.  Count XII – Breach of Duty of Loyalty                                     46

P.   Count XIII – Conflict of Interest                                        47

Q.  Count XIV – Conversion                                                    48

<u>Claims Arising Out of the Prospective Sale of Assets to Stellar (Counts XV – XIX)</u>   49

R.  Count XV – Breach of Fiduciary Duty                                       50

S.  Count XVI – Interested Director Transactions                              51

T.  Count XVII – Interested Shareholder Transactions                         52

U.  Count XVIII – Minority Shareholder Oppression                            53

V.  Count XIX – Anticipatory Breach and/or Repudiation of Contract           54

    <u>Additional Claims</u>                                                    55

W.  Count XX – Civil Conspiracy                                               55

X.  Aiding and Abetting                                                       56

Defendant, Refrigeration Service and Engineering, Inc. ("RSE"), submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff, Thomas Spina ("Spina").

Introduction

This litigation arises from the demise of the working relationship between Spina and Robert E Hepp III ("Hepp"), Cynthia A. Fitzgerald-Hepp ("Cindy"), and Kenneth C. Philo, II ("Philo")( the "Individual Defendants").  Spina, upset that the Individual Defendants had decided to end their working relationship with him, has engaged in a course of conduct to sabotage RSE's ability to continue to do business and wind up its affairs, steal RSE's clients, and otherwise attempt to impede the ability of the Individual Defendants to successfully work in the refrigeration industry for any other business organization.

To that end, Spina filed this Complaint in bad faith and for the sole purpose of tortiously interfering with RSE's contract to sell certain assets to a third party.  Spina also quit RSE unannounced, joined a competitor, solicited RSE's clients, and threatened the third party that had contracted to purchase RSE's assets with the prospect of expending significant legal fees defending itself if it proceeded with the purchase of those assets.

Spina's tactics worked.  As a direct result of the filing of this Complaint, the third party terminated the agreement to purchase assets, which caused a loss of $475,000 to RSE.

As discussed in this memorandum, Spina's Complaint is nothing more than a continual repetition of conclusory allegations, with no material facts averred to support them.  It does not even attempt to meet the pleading requirements of the Private Securities Litigation Reform Act, the Pennsylvania Securities Act, and Rule 9(b) of the Federal Rules of Civil Procedure, or otherwise plead facts which fulfill the elements of each of its twenty-one purported Counts.  The

Complaint was obviously slapped together and filed in bad faith, for the sole purpose of interfering with the pending asset sale.

For the reasons discussed herein, the Court should dismiss the entire Complaint, with prejudice.

Factual Background[1]

RSE designs, installs and services industrial and commercial refrigeration systems, predominantly for industrial clients. Hepp, Cindy and Philo have been shareholders of RSE throughout the time period relevant to this lawsuit.

Spina, prior to 2004, worked for a refrigeration company that served predominantly commercial customers located in the Philadelphia area. In 2004, that company was acquired by a larger organization. As a result of that acquisition, Spina approached Hepp and Philo regarding the establishment of a new a company to serve commercial clients in the Philadelphia area. RSE, at that time, served predominantly industrial customers located outside the Philadelphia area.

In January 2004, Hepp, Philo, Spina and a fourth individual (Les Hess) formed Statewide Refrigeration & Engineering, Inc. ("Statewide"). Several months later, Statewide registered the fictitious name of Industrial Refrigeration & Engineering, Inc. ("IRE") and, thereafter, did business as IRE. IRE provided and serviced refrigeration systems for commercial customers in the Philadelphia area. Hepp, Philo, Spina and Hess were each 25% shareholders of IRE. Spina was also a director and officer of IRE. Sometime thereafter, Hepp, Philo and Spina purchased the interest of Hess, resulting in each of them owning one-third of the shares of IRE.

---

[1] This Motion to Dismiss is based on the pleading deficiencies of the Complaint. However, because the Complaint fails to provide any meaningful factual history, RSE believes that the Factual Background set forth above will be beneficial to the Court's understanding of the context in which this dispute arose.

Startup capital for IRE was obtained by Hepp.  He, along with his wife Cindy, guaranteed a $100,000 line of credit that for IRE.  Spina did not put up any money or guaranty any loans on behalf of IRE.

The only employees of IRE were field service personnel.  All other necessary expertise was provided by RSE to, or on behalf of, IRE.  More specifically, RSE provided all of the engineering, design, construction and office management services required by IRE and its customers.  IRE paid RSE hourly rates for providing these services, and those rates were negotiated with IRE.  A copy of the rate schedule is attached as Exhibit "B".  The rate schedule remained substantially the same throughout IRE's seven year relationship with RSE.

Spina's responsibilities at IRE were predominantly sales and field service related.  From 2004 thru 2010, Spina received approximately $100,000 to $125,000 a year in salary and shareholder distributions from IRE.

In 2011, Cindy took over the administrative/financial management of both RSE and IRE.  Under her direction, the accounting software was upgraded, new procedures were implemented for work order review and processing, a GPS system was implemented for dispatching of technical personnel, a computerized dispatch system for relaying job numbers was implemented, the phone systems for technical personnel were upgraded to include data and email capability, corporate liability and health insurance plans were changed, a new procedure for parts ordering and invoicing was implemented, and the computer systems in the office were upgraded.

Both companies experienced significant increases in their net revenues as a result of these operational/administrative changes.  In 2011, Spina's total income from IRE increased to over $190,000.

3

Since the inception of IRE, Spina struggled with handling both the sales and the field service responsibilities.  In the summer of 2011, RSE's Service Manager took over Spina's service responsibilities for IRE.  Shortly thereafter, Spina, Hepp, Cindy and Philo (the Individual Defendants) decided that RSE and IRE should merge.  One major reason for the merger was Spina's inability to handle his responsibilities at IRE without significant assistance from RSE personnel.  Spina was a major proponent of the merger.  As a result, in December 2011, the two companies merged under the RSE name, and did business as Industrial Refrigeration Service & Engineering ("IRSE").

As part of the merger, Hepp, Philo, Spina and Cindy agreed that the shares of the merged RSE entity would be allocated as follows: Hepp 30 %; Philo 30%; Spina 30%; Cindy 10% (hereafter the "Agreed Share Allocation").  To accomplish that allocation fairly, a professional valuation company (Haas Business Valuation Services, Inc.) was hired to determine the respective pre-merger values of IRE and RSE.  Based on this valuation (the "Haas Report"), calculations were made as to the number of shares in the pre-merger entities that each shareholder was required to either buy or sell in order to end up with the Agreed Share Allocation of the merged entity.  A copy of the Haas Report is attached as "C",

Pursuant to the Haas Report, Cindy was required to pay the three shareholders of IRE (Hepp, Spina and Philo) a total of $43,800 for 30 shares in IRE; Philo was required to pay $9800 to Cindy to acquire an additional shares 10.28 in RSE; and Spina (who pre-merger owned no shares of RSE) was required to purchase 308.4 shares of RSE from Hepp and Cindy for a total of $294,000.

Cindy and Philo paid for their shares on or before the effective date of the merger.  Spina, however, was allowed to pay for his shares over a five year period pursuant to the terms of two

promissory notes issued to Hepp and Cindy (the "Notes").  In addition, Spina's obligation to make any payments on the Notes prior to December 31, 2016, was contingent on the amount of the shareholder distribution he received from RSE each year.

The merger was effective December 31, 2011.  Spina became an officer of the merged RSE entity.  Hepp, Philo and Cindy provided $70,000.00 in startup income needed to effectuate the merger.  Spina did not provide any startup capital.

Spina's annual income significantly increased after the merger.  In 2012, Spina received in excess of $328,000 from RSE.  In 2013, he received approximately $293,000 from RSE.

In late 2013 or early 2014, RSE was contacted by Stellar Refrigeration Services LLC ("Stellar") regarding the potential sale of RSE to Stellar.  Over the next four months, negotiations took place regarding the sale of some of RSE's assets to Stellar, along with Stellar's post-sale employment of RSE's current employees.  Hepp conducted the negotiations on behalf of RSE, and kept the other shareholders (including Spina) apprised as to the status of the negotiations and the terms being discussed.

During this time period, Stellar expressed an interest in employing Hepp, Philo and Spina going forward.  Stellar provided Hepp with proposals for the future employment of each of them, and Hepp forwarded the respective proposal to each shareholder.  Sometime thereafter, Spina advised Hepp that he would negotiate directly with Stellar regarding the terms of his potential employment with Stellar.

In April 2014, each of the shareholders were provided a draft of an Asset Purchase Agreement ("APA") pursuant to which Stellar was to acquire certain assets of RSE for $475,000. In addition to its obligations under the APA, Stellar also agreed to employ the existing RSE employees post-sale.

In May, the Board of Directors of RSE approved the sale of certain assets to Stellar.[2]   On May 22, 2014, at a special meeting of the shareholders of RSE, a majority of the shareholders voted to sell certain assets of RSE pursuant to the APA.  Spina was the lone dissenting vote.

On May 29, 2014, Spina filed a Writ of Summons in the Court of Common Pleas for Montgomery County, Pennsylvania.  *See Spina v. Refrigeration Service & Engineering, et al.*, No. 2014-12128.

On June 4, 2014, the APA was executed by Stellar and RSE.  Closing was scheduled for the end of June.

On June 19, 2014, Spina filed his Complaint.  The Complaint contests, among other things, the legality of the APA and RSE's authority to sell its assets to Stellar.  *See* Complaint at ¶¶ 43-46, 132-133, and 150-180.

On June 23, 2014, Spina (through counsel) sent Stellar a Demand for Preservation of Electronically Stored Information ("Demand for ESI"), which required Stellar to <u>immediately</u> take onerous steps to preserve its ESI, and also instructed Stellar that it would be receiving deposition subpoenas "imminently".  A copy of the Demand for ESI sent to Stellar is attached as Exhibit "D".

Not surprisingly, as a direct result of Spina's filing of the Complaint and service of his Demand for ESI, Stellar terminated the APA.  As a result, RSE lost $475,000 in income.

Unbeknownst to the Defendants, while the Stellar negotiations were taking place, Spina was negotiating to join a competitor of RSE.  That competitor is Refrigeration Design & Service, Inc. ("RD&S").  Without providing RSE with any notice, Spina, in late May/early June, quit RSE and joined RD&S.  Spina then began soliciting RSE's customers.  <u>See</u> email to customers

---

[2]  RSE's Board consists of Hepp, Philo and Cindy.

with solicitation letter, attached as Exhibit "E".

On July 2, 2014, the Board of RSE approved a resolution to dissolve the company. A meeting of the shareholders to vote on this resolution was held on July 12, 2014, at which a a majority of the shareholders of RSE voted in favor of dissolution. Spina voted against the resolution to dissolve, despite the fact that in his Complaint, he requests dissolution as a form of relief at least eighteen times. See Prayers for Relief to Counts I - XVIII.

RSE is now in the process of winding up its affairs, albeit without the $475,000 it would have received had Spina not caused Stellar to terminate the APA.

On July 15, 2014, the Defendants removed the action filed by Spina to Federal Court.

The Complaint

The Complaint is attached as Exhibit "A". It is long on general conclusory accusations, and almost devoid of averments of fact supporting those allegations.

The Complaint purports to set forth the following twenty-one causes of action:

| | |
|---|---|
| Count I: | Violation of 78 U.S.C. §78j and S.E.C. Rule 10b-5 |
| Count II: | Control Person Liability |
| Count III: | Violations of the Pennsylvania Securities Act |
| Count IV: | Violation of the PA Securities Act Control Person Liability |
| Count V: | Fraudulent Misrepresentation |
| Count VI: | Negligent Misrepresentation |
| Count VII: | Unjust Enrichment |
| Count VIII: | Corporate Waste |
| Count IX: | Ultra Vires Undertakings |
| Count X: | Conversion |
| Count XI: | Self Dealing |
| Count XII: | Breach of the Duty of Loyalty |
| Count XIII: | Conflicts of Interest |
| Count XIV: | Conversion |
| Count XV: | Breach of Fiduciary Duty |
| Count XVI: | Interested Director Transactions |
| Count XVII: | Interested Shareholder Transactions |
| Count XVIII: | Minority Shareholder Oppression |
| Count XIX: | Anticipatory Breach and/or Repudiation |
| Count XX: | Civil Conspiracy |

Count XXI:    Aiding and Abetting

The Complaint alleges a litany of claims for tortious conduct with respect to the operation of RSE, purportedly committed by the three Individual Defendants (and in particular Robert Hepp).  It purports to allege statutory and common law causes of action arising from (1) fraud with respect to the merger (Counts I – VI); (2) the misappropriation and conversion of corporate assets, usurpation of corporate opportunities and other acts of tortious conduct in the operations of the corporation (Counts VII – XIV), and (3) the breach of fiduciary duties and other tortious conduct arising from the prospective sale of certain assets of the corporation to Stellar (Counts XV – XIX).  It ends with two unspecified "Additional Claims" for civil conspiracy and aiding and abetting (Counts XX and XXI).  The Complaint, however, fails <u>entirely</u> to allege any specific facts which support Spina's  conclusory allegations.

Spina's first group of claims (Counts I – VI), purportedly arise from the merger.  In that regard, Spina alleges that the valuation of each corporation was fraudulent and that IRE (the company in which Spina owned stock pre-merger), was worth more than RSE (the company in which Spina did not own stock pre-merger).  As a result of this fraud, Spina alleges that he was required to pay more than he should have (i.e., execute the two Notes to Hepp and Cindy) to acquire his 30% interest in RSE post merger.

Nowhere in the Complaint, however, does Spina allege with any specificity what was fraudulent about the pre-merger valuation of the companies and why; what the "true" valuation should have been and why; what the fraudulent misrepresentations were; who made the fraudulent misrepresentations to him; when and how those misrepresentations were made to him; why he did not do his own valuation; when he learned of the alleged fraud; and how he was monetarily damaged by the alleged fraud and in what amount.

In short, he simply alleges that the valuation was fraudulent because IRE was "overbilled" by RSE, and nothing more. Based on that bald conclusion, he purports to allege causes of action for federal and state securities fraud, common law fraud and negligent misrepresentation. *See* Counts I – VI.

Spina's second group of claims (Counts VII – XIV), purportedly arise from the Individual Defendants' operation of RSE. These eight causes of action sound in tort and suffer from the same lack of specificity as the previous six causes of action.

In Counts VII – XIV, Spina alleges that some or all of the Individual Defendants misappropriated, converted and/or wasted property of the corporation, engaged in *ultra vires* acts, and received "Ill-Gotten Gains". Nowhere in the Complaint, however, does Spina identify what corporate property was converted or taken; when the property was converted or taken; by whom the property was converted or taken; what acts were *ultra vires* and why; who engaged in the *ultra vires* acts; what the Ill-Gotten Gains were, how they were obtained and who receive them. Nor does Spina allege how he or the corporation suffered monetary damage or other harm from the tortious conduct generally alleged.

In short, Spina simply alleges that the Individual Defendants misappropriated unspecified corporate assets, and nothing more. Based on these general conclusory allegations, Spina purports to allege these eight common law causes of action. *See* Counts VII – XIV.

The third group of claims (Counts XV – XIX) purportedly arise from the prospective sale of assets to Stellar. The facts alleged by Spina are that the defendants voted to sell certain corporate assets to Stellar for $475,000, and that the Defendants rejected Spina's offer to purchase unspecified corporate assets for $500,000. Spina also alleges "on information and belief" that the Individual Defendants negotiated "the payment of large guaranteed sums to the

9

individual defendants as part of employment or other agreements with Stellar."

Based on those allegations, Spina purports to allege five additional common law causes of action sounding in tort. Nowhere in the Complaint, however, does he allege facts which establish why the proposed sale to Stellar was improper, or why agreeing to that prospective sale constitutes tortious conduct by any of the Defendants. In addition, Spina does not allege how he or the corporation suffered any damages from the APA, or what those damages are. In short, Spina is alleging that because he disagreed with the decision to sell those assets to Stellar, the Defendants have violated common law duties owed to him and somehow he has been damaged.[3]

It is not hyperbole to state that the lack of specific factual allegations supporting the twenty-one statutory and common law claims brought by Spina is truly stunning; in fact it is reckless. Given the deficiencies in the drafting of the Complaint and the events leading up to its filing, it is quite obvious that this Complaint was thrown together for the purpose of obstructing the pending sale to Stellar. It was filed even though Spina had no good faith factual basis for the claims set forth therein. Stated another way; this Complaint was clearly filed in bad faith.

The lack of any factual basis for each purported cause of action is more specifically discussed in the next section of this memorandum. However, a specific analysis of the few facts alleged (and not alleged) with respect to the purported fraud in the merger will provide a good example of the deficiencies that are rampant throughout the entire pleading.

---

[3] The two Additional Claims simply repeat conclusory allegations previously made in the Complaint, and add no new factual allegations.

<u>The Factual Allegations Regarding the Merger</u>

The Complaint contains, at best, ten paragraphs which have allegations of fact (as opposed to factual conclusions) regarding the merger and the securities fraud purportedly involved with that merger. Those paragraphs (and the deficiencies with them) are as follows:

In paragraph 15, Spina alleges:

> There was never a meeting of shareholders of IRE to discuss a merger with RSE, and never a plan of merger timely submitted to Plaintiff or other shareholders for review. **The Hepp Defendants intentionally concealed relevant facts about the deal to mislead Plaintiff into accepting it.** (Emphasis added.)

Putting aside the factual inaccuracies of the first sentence, this paragraph fails to: identify what the relevant facts are that were allegedly concealed from Spina; how and when they were concealed; and how Spina was misled by their concealment. Nor is this information provided with any specificity elsewhere in the Complaint.

In paragraph 16, Spina alleges:

> The Hepp Defendants represented to Plaintiff that the contemplated Merger between RSE and IRE was necessary to eliminate redundancies and create economies of scale.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what specifically was represented regarding redundancies and economies of scale; any facts which evidence that these alleged representations were not true; and, assuming they were not true, how they caused any damage to Spina. Nor is this information provided with specificity elsewhere in the Complaint.

In paragraph 18, Spina alleges:

> The Hepp Defendants, as sellers and buyers of securities, intentionally caused Plaintiff to believe, incorrectly, that a 30% interest in RSE was worth (i) Plaintiff's 33% stake in IRE (to be tendered for shares in RSE), plus (ii) $294,000.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: how the Hepp Defendants caused Spina to believe that his 30% interest in the merged entity was worth his one-third interest IRE plus $294,000 and what they said to Spina in that regard; why this valuation was not accurate; what the correct valuation should have been and why; and how the Hepp Defendants' unspecified conduct which allegedly caused Spina to believe in the accuracy of this valuation caused him any monetary damage. Nor is this information provided with specificity elsewhere in the Complaint.

In paragraph 20, Spina alleges:

> The Hepp Defendants, by misstatement and omission, misrepresented the value of RSE by failing to disclose that, before the merger, RSE had grossly overbilled IRE for overhead, rent, and administration, thereby inflating RSE's earnings and depressing IRE's earnings. In so doing, the Hepp Defendants made RSE appear more valuable, and IRE less valuable, than each actually was. Plaintiff paid far more for his interest in RSE than he would have if the relative values of the two companies were accurately presented by Defendants.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what the alleged misrepresented value of RSE was; how the Hepp Defendants communicated the alleged misrepresentation to Spina; what the amounts were that RSE billed for overhead, rent, and administration; why those amounts constitute "gross overbilling"; what the amounts were that should have been billed; what RSE's earnings were and how they were inflated; what IRE's earnings were and how they were depressed; what Spina paid for his interest in RSE; what Spina should have paid for his interest in RSE if the relative values of the two companies were accurately presented to him; and how he was damaged by this allegedly unspecified fraudulent valuation of the companies. Nor is this information provided with specificity elsewhere in the Complaint.

In paragraph 26, Spina alleges:

> The Business Valuations were prepared on the basis of data provided by
> the Hepp Defendants, with no input from Plaintiff. As the Hepp
> Defendants knew and intended, the data that they provided to Mr. Haas
> unfairly skewed the relative values of the two companies, making RSE
> appear to be more valuable than, in fact, it was, and making IRE appear to
> be less valuable than, in fact, it was.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what the

Business Valuations were; what the data was that was allegedly provided by the Hepp

Defendants; if Spina was unable to provide "input" and why; how the unspecified data allegedly

provided to Mr. Haas unfairly skewed the relative values of the two companies; and how Spina

was damaged by this unspecified alleged conduct.  Nor is this information provided with

specificity elsewhere in the Complaint.

In paragraph 27, Spina alleges:

> The Business Valuations fraudulently represented to Plaintiff that RSE was
> substantially more valuable than IRE, thus purporting to justify the Hepp
> Defendants' demand that Plaintiff pay additional funds to Robert Hepp and
> Cynthia Hepp in connection with the Merger.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what the

Business Valuations were; what the fraudulent representations were; why the representations

were fraudulent; what the "true" value of IRE was; how and when the Hepp Defendants'

demanded that Spina pay additional funds to Robert Hepp and Cynthia Hepp in connection with

the Merger; why Spina could not have declined to agree to the merger; why Spina could not have

obtained his own valuations; and how Spina was damaged from the allegedly fraudulent

Business Valuations.  Nor is this information provided with specificity elsewhere in the

Complaint.

In paragraph 28, Spina alleges:

> The Hepp Defendants knew that the Business Valuations were false, and intended that Plaintiff be misled by them.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what the Business Valuations were and why they were false; how and why the Hepp Defendants knew that the Business Valuations were false; and the factual basis for the allegation that the Hepp Defendants intended that Spina be misled by the unspecified Business Valuations.  Nor is this information provided with specificity elsewhere in the Complaint.

In paragraph 30, Spina alleges:

> In fact, as of the end of 2011, RSE was substantially less valuable than IRE, as conclusively evidenced by the fact that the functions performed by IRE before the Merger, as provided after the Merger, contributed substantially more to the merged company's revenues and profits during 2012 and 2013 than did the assets formerly owned and operated by RSE, pre-Merger.

Putting aside the factual inaccuracies of this paragraph, it fails to identify: what IRE's and RSE's values were as of the end of 2011; how Spina concluded that RSE was substantially less valuable than IRE at that time; what functions were performed by IRE before the Merger and what those functions contributed to the merged company's revenues and profits in 2012 and 2013; what functions were performed by RSE before the Merger and what those functions contributed to the merged company's revenues and profits in 2012 and 2013; and how Spina was damaged by the difference in the respective entities contribution to net profits in 2012 and 2013. Nor is this information provided with specificity elsewhere in the Complaint.

Spina then sums up all of these general allegations regarding the events leading up to the merger with two wholly conclusory paragraphs.  In paragraph 35, Spina alleges:

> To induce Plaintiff to enter into an agreement to proceed with the Merger, and to induce Plaintiff to tender his shares in IRE in exchange for shares of RSE to effectuate the Merger, Defendants made false representations of material fact to Plaintiff, including the

following:

    a.     That the merger of RSE and IRE would result in economies of scale sufficient to justify the extra money Plaintiff would be required to invest in the merged company.

    b.     That the combination of RSE and IRE would result in the elimination of redundancies sufficient to justify the extra money Plaintiff would be required to invest in the merged company.

    c.     That RSE was substantially more valuable than IRE.

    d.     That the merger would be a good deal for all shareholders of IRE.

And in paragraph 36, Spina alleges:

To induce Plaintiff to enter into an agreement to proceed with the Merger, and to induce Plaintiff to tender his shares in IRE in exchange for shares of RSE to effectuate the Merger, Defendants omitted to disclose to Plaintiff various material facts about RSE (the "Omissions"), including the following:

    a.     The extent to which, and the true reasons for which, RSE had been overbilling IRE for overhead, rent, and administration, thereby falsely inflating RSE's earnings and depressing IRE's earnings.

    b.     That RSE had been considering declaring bankruptcy.

Again, putting aside the factual inaccuracies of these paragraphs, they fail to identify: what the representations of material fact were regarding the economies of scale and why they were false; what the representations of material fact were regarding the elimination of redundancies and why they were false; what the representations of material fact were regarding the merger being a good deal for all shareholders of IRE and why they were false; how these unspecified representations made it sufficient to justify the extra money required to invest in the merged company; how and in what amounts RSE overbilled IRE for overhead, rent, and administration; the "true reasons" RSE overbilled IRE for overhead, rent, and administration; how RSE's earnings were falsely inflated; how IRE's earnings were falsely depressed; the factual basis for the allegation that RSE had been considering declaring bankruptcy; and how

proceeding with the merger caused damage to Spina.  Nor is this information provided with specificity elsewhere in the Complaint.

In short, what Spina alleges factually with respect to the merger are his <u>conclusions</u> that (a)  the Haas Valuation was not fair, inaccurate and/or fraudulent; (b) IRE was previously billed too much for services provided by RSE; and (c) that he should have paid less (or nothing) for his shares of the merged entity.  Based solely on these conclusions, Spina further concludes that the Hepp Defendants lied to him about something or concealed something from him, which "caused" him to agree to the terms of the merger.  But he does not allege any specific factual basis to support these conclusions.

This pleading style is pervasive throughout the Complaint and applicable to every one of the twenty-one Counts in the Complaint.  Not one Count is supported with any specific factual pleading.  Not one Count satisfies its pleading requirements as a matter of law.

Legal Discussion

A.  Standards of Review and Pleading Requirements

1.  Rule 12(b)(6) Standard of Review

When reviewing a motion to dismiss, the Court is to construe the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3rd Cir. 2010)(internal quotation marks omitted)(quoting *Gelman v. State Farm Mut. Auto. Ins. Co.,* 583 F.3d 187, 190 (3rd Cir. 2009).  A motion to dismiss, pursuant to the plausibility standard, should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556).

This standard requires that the plaintiff allege "more than a sheer possibility that a defendant has

acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556.) **"[A] plaintiff's obligation to provide**

**the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a**

**formulaic recitation of the elements of a cause of action will not do."** *Twombly,* 550 U.S. at

555 (alteration in *Twombly*)(citation and internal quotations omitted)(emphasis added).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the Court must

"tak[e] note of the elements a plaintiff must plead to state a claim, identify allegations that,

because they are no more than conclusions, are not entitled to the assumption of truth, and

finally, where there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement for relief." *Santiago v.*

*Warminster Twp.,* 629 F.3d 121, 130 (3rd Cir. 2010)(citing *Iqbal,* 129 S.Ct. at 1947, 1950*)*

(internal quotation marks omitted); *see also Great Western Mining & Min. Co. v. Fox Rothschild*

*LLP*, 615 F.3d 159, 177 (3d Cir. 2010).[4]

The Court's review is not limited to evaluating the complaint alone. It may consider

documents that form the basis of a claim, *Lum v. Bank of Am.,* 361 F.3d 217, 221 n.3 (3rd Cir.

2004), "documents whose contents are alleged in the complaint and whose authenticity no party

questions, [even though they] are not physically attached to the pleading", *Pryor v. Nat'l*

*Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3rd Cir. 2002), documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v.*

---

[4]  *Iqbal* describes the process as a "two-pronged approach" but the Supreme Court took note of
the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. In
*Santiago*, this Circuit deemed the process a three-step approach. *See Santiago*, 629 F.3d at 130.

*Makor Issues & Rights Ltd.,* 551 U.S. 308, 320, 127 S. Ct. 2499 (2007).

    2.    <u>Rule 9(b) Pleading Requirements</u>

When a complaint contains claims of fraud or mistake, the pleading requirements are stricter. Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," but that "[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally." Rule 9(b)'s heightened pleadings standard "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417 (3rd Cir. 1997).

**"To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."** *Frederico v. Home Depot,* 507 F.3d 188, 200 (3rd Cir. 2007)(emphasis added). Although Rule 9(b)'s requirements are stringent, "courts should be sensitive to situations in which sophisticated defrauders may successfully conceal the details of their fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 217 (3rd Cir. 2002)(internal quotations omitted). Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of 9(b) may be relaxed. *Id.* However, "even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.* (internal quotations omitted). In addition, although malice, intent, knowledge and other conditions of mind of a person may be alleged generally, a plaintiff is still required to provide factual allegations that support his legal

theory.  Boilerplate and conclusory allegations do not suffice under Rule 9(b). *Theodore Cohen*

*v. Andrew Telsey*, 2009 U.S. Dist. LEXIS 101696 (D.N.J. 2009).

 A claim based on an alleged federal securities fraud must also satisfy Rule 9(b)'s pleading

requirements:

> As applied to Section 10(b) claims, Rule 9(b) requires a plaintiff to plead (1) a specific
> false representation [or omission] of material fact; (2) knowledge by the person who
> made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4)
> the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his
> damage.  Moreover, Rule 9(b) requires plaintiffs to identify the source of the allegedly
> fraudulent misrepresentation or omission.  In sum, Rule 9(b) requires, at a minimum, that
> plaintiffs support their allegations of securities fraud with all of the essential factual
> background that would accompany the first paragraph of any newspaper story - that is,
> the who,what, when, where and how of the events at issue.

*Kevin Joyce v. Bobcat Oil & Gas, Inc.,* 2008 U.S. Dist. LEXIS 27181 at pp. 4-6 (M.D. Pa.

2008)(quoting  *In re: Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256, 276 (3rd Cir.

2006)(quotations omitted) and citing *In re Rockefeller Ctr. Properties, Inc.,* 311 F.3d 198, 216

(3rd Cir. 2002)).

  3. <u>The PSLRA Pleading Requirements</u>

 The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2),

established heightened pleading requirements in order to successfully plead a cause of action

alleging federal securities fraud.  The twin goals of the PSLRA are to "curb frivolous, lawyer-

driven litigation, while preserving the investors' ability to recover on meritorious claims."

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499 (2007).  *See also*

*In re PMA Capital Corp. Sec. Litig.,* 2005 U.S. Dist. LEXIS 15696 at p.5 (E.D. Pa.

2005)("Congress enacted the PSLRA to remedy the tactic of filing securities complaints to force

unwarranted settlements.").  The case at bar is the poster child of the type of case that the

PSLRA was intended to eliminate, at least with respect to the purchase or sale of shares of a non-

public corporation.

The PSLRA requires that a complaint "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. at 313, 127 S.Ct. at 2509. To satisfy the latter requirement, a plaintiff must "state with particularity facts giving rise to a **strong** inference that the defendant acted with the required state of mind." *Id.* at 314, 127 S.Ct. at 2504 (quoting 15 U.S.C. § 78u-4(b)(2)(emphasis added)). In holding that the investors bringing the securities fraud claim in *Tellabs* had failed to meet this standard, the Supreme Court explained: "[t]o qualify as 'strong' within the intendment of [*15 U.S.C. § 78u-4(b)(2)*] . . . an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314, 127 S.Ct. at 2504-05. *See also Shah Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241-242 (3rd Cir. 2013).

The PSLRA provides two distinct pleading requirements, both of which must be met in order for a complaint to survive a motion to dismiss. First, under 15 U.S.C. §78u-4(b)(1), the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Winer Family Trust v. Queen,* 503 F.3d 319, 326 (3rd Cir. 2007)(construing 15 U.S.C. § 78u-4(b)(1)).

Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). *See Howard Charatz v. Avaya, Inc.,* 564 F.3d 242, 252-253 (3rd Cir. 2009). Significantly, both provisions require facts to be pled