"with particularity." *Id.* This standard "requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Id.* (quoting *In Re: Advanta Corp. Securities Litigation*, 180 F.3d 525, 534 (3rd Cir. 1999)).

The PSLRA adds an additional requirement where an allegation regarding a defendant's statement or omission is made "on information and belief." 15 U.S.C. § 78u-4(b)(1). In those circumstances, plaintiffs must also:

> [S]tate with particularity all facts on which that belief is formed. That is, when allegations are made on information and belief, the complaint must not only state the allegations with factual particularity, but must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey.

*Howard Charatz v. Avaya, Inc.,* 564 F.3d at 253 (quoting *Advanta* and citing *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 350 (5th Cir. 2002)).

The PSLRA's requirement for pleading scienter marks a sharp break with Rule 9(b). Under §78u-4(b)(2), "a plaintiff can no longer plead the requisite scienter element generally, as he previously could under Rule 9(b)." *Howard Charatz v. Avaya, Inc., supra.* (quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008)). Instead, under the PSLRA's "[e]xacting pleading standard for scienter, any private securities complaint alleging that the defendant made a false or misleading statement must . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Howard Charatz v. Avaya, Inc., supra.* (quoting *Tellabs,* 551 U.S. at 317, 127 S. Ct. at 2504, 2508 (internal quotation marks omitted)).

For the scienter requirement in a 10b-5 claim, this means the plaintiff must allege facts giving rise to an inference of scienter that is "cogent and compelling, not merely reasonable or permissible; that is, strong in the light of other explanations." *Kevin Joyce v. Bobcat Oil & Gas,*

*Inc.,* 2008 U.S. Dist. LEXIS 27181 at p.2 (M.D. Pa. 2008)(quoting *Tellabs, Inc., supra.*)(internal quotations omitted).  In applying this standard, the Court must consider competing, plausible inferences of nonculpable intent, and the inference of fraudulent intent must be "at least as compelling" as these competing inferences. *Id.*

Under the PSLRA, "if a plaintiff alleges that a defendant made an untrue statement of material fact or omitted to state a material fact that was necessary to make a statement made not misleading in the circumstances, the complaint must specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading. *Kevin Joyce,* 2008 U.S. Dist. LEXIS 27181 at pp. 3-4 (internal quotations and citations omitted).

Moreover, the level of specificity required by the PSLRA is applicable to **each** defendant. A plaintiff may not simply group the defendants together in the allegations that they made misrepresentation and omissions. "The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." *Kevin Joyce,* 2008 U.S. Dist. LEXIS 27181 at p.7 (quoting *Winer Family Trust, supra,* 503 F.3d at 335-36, and citing *In re: Suprema Specialties, 438 F.3d at 276* and *Key Equity Investors, Inc. v. Sel-Leb Marketing, Inc.,* 246 Fed. Appx. 780, 785 n.6 (3rd Cir. 2007)).

Spina's Complaint does not even attempt to satisfy the aforementioned pleading requirements.

<u>Counts Allegedly Arising Out of the Merger (Counts I – VI)</u>

Spina contends that Count I – VI all arise out of the merger.  For the resons discussed below, each Count should be dismissed.

B.   Count I
     <u>Violation of 15 U.S.C. §78j and Rule 10b-5</u>

Count I of the Complaint purports to allege a federal securities fraud claim under Rule 10b-5 against the "Hepp Defendants".[5]  The relevant allegations of Count I are:

- The Hepp Defendants carried out a plan intended to deceive Spina and caused him to purchase shares in RSE and execute the Notes at distorted prices. (¶68)

- The Hepp Defendants defrauded Spina in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78a, *et seq*. (¶69)

- The Hepp Defendants made material misrepresentations and failed to disclose material information regarding RSE in connection with their sale of shares of RSE to Plaintiff. (¶70)

- The Hepp Defendants engaged in a continuous course of conduct to conceal from Plaintiff adverse material information about RSE, as specified herein.  (¶71)

- The Hepp Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Said Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth.  (¶72)

- As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, the price that Plaintiff paid for shares of RSE was grossly inflated and in excess of their actual value. (¶73)

- Plaintiff acquired his shares in RSE as a direct and proximate result of the material misrepresentations and material omissions in which the Hepp Defendants engaged, and was damaged thereby.  (¶74)

- At the time of said misrepresentations and omissions, Plaintiff was ignorant of

---

[5] The Complaint defines the Hepp Defendants as RSE, Robert Hepp and Cynthia Fitzgerald-Hepp.  Complaint at ¶6.

their falsity, and believed them to be true. Had Plaintiff known the truth concerning the relative value of RSE and IRE, and the actual value of the shares purchased, all facts which were not disclosed by the Hepp Defendants, Plaintiff would not have purchased the RSE shares, would not have executed the Notes, and/or would not have done so at the inflated price he paid.  (¶75)

- By virtue of the foregoing, the Hepp Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  (¶76)

- As a direct and proximate result of the Hepp Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchase of shares in RSE. (¶77)

- The losses suffered by Plaintiff as a result of such misrepresentations and omissions are, and were, directly and causally related to such misrepresentations and omissions.  (¶78)

Complaint at ¶¶68-78.

This Count does not contain a single factually specific allegation supporting a 10b-5 claim; it is entirely conclusory.  Therefore, to determine if Spina has satisfied the pleading requirements for a federal securities fraud claim, the entirety of the Complaint must be reviewed.

        1.       Elements of a §10b Securities Fraud Claim

Section 10(b) of the Securities Exchange Act forbids (1) the "use or employ[ment of] . . . any manipulative or deceptive device or contrivance," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of [SEC] rules and regulations." 15 U.S.C. § 78j(b) (2006).  SEC regulations, in turn, make it unlawful:

(a)      To employ any device, scheme, or artifice to defraud;

(b)      To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading; or

(c)      To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 ("Rule 10b-5").

The Supreme Court has identified the six required elements of a Securities Exchange Act §10(b) private cause of action:

(1)     a material misrepresentation (or omission);

(2)     scienter;

(3)     in connection with the purchase or sale of a security;

(4)     transaction causation (reliance);

(5)     loss causation (a causal connection between the material misrepresentation and the loss); and

(6)     economic loss.

*Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341-42, 125 S. Ct. 1627 (2005). *See also In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 275 (3rd Cir. 2006).

<u>Element No. 1 – Material Misrepresentation or Omission</u>

The first element requires a statement (or omission) that is false. With respect to falsity, the pleading must specify each misleading statement, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity. 15 U.S.C. § 78u-4(b)(1); *Tellabs,* 551 U.S. 308, 127 S. Ct. at 2508; *Winer Family Trust,* 503 F.3d at 326; *Howard Charatz v. Avaya, Inc., supra.* Allegations made on information and belief can meet the pleading requirement by providing "sufficient documentary evidence and/or a sufficient description of the personal sources of the plaintiff's beliefs." *California Pub. Employees' Retirement Sys. v. Chubb Corp.,* 394 F.3d 126, 147 (3rd Cir. 2004).

The materiality requirement in the first element is also critical. " An allegation that a defendant uttered an immaterial statement will not satisfy the requirement that the complaint include a false or misleading statement." *Shah Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 243

(3rd Cir. 2013)(quoting *Avaya,* 564 F.3d at 259 (internal citations omitted)).  A misrepresentation or omission is material if there is a "substantial likelihood that the disclosure . . . would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126 (1976).  *See also EP Medsystems, Inc. v. Echocath, Inc.,* 235 F.3d 865, 872 (3rd Cir. 2000).

The Complaint completely fails to satisfy the first pleading requirement of a material misrepresentation or omission.  Spina alleges only factual conclusions, and not the specific facts that support such conclusions.  He alleges that the Haas Valuation is fraudulent, but does not explain why or how he comes to this conclusion.  He alleges that IRE was "overbilled", but does not explain how or why he comes to this conclusion.  He alleges that some or all of the Defendants made misrepresentations to him, but fails to specify what those misrepresentation were or who specifically made them.  He has made absolutely no attempt to allege the who, what, when, where and how of the events that purportedly constituted fraud.

In short, the Complaint not only fails to allege a **material** misrepresentation; it does not even identify the misrepresentations that must be evaluated for materiality.

<u>Element No. 2 – Scienter</u>

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n.12, 96 S. Ct. 1375 (1976), and requires a knowing or reckless state of mind. *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534-35 (3rd Cir. 1999).  In addition, as mentioned previously, Spina must "state with particularity facts giving rise to a **strong** inference that the defendant acted with the required state of mind." *Howard Charatz v. Avaya, Inc., supra.* (emphasis added).

Spina has failed to allege scienter for the same reason he has failed to allege all the other elements of this claim. He has simply failed to state specific facts evidencing an intent to deceive, manipulate or defraud. While he may have <u>concluded</u> that he was defrauded, he certainly has not alleged any specific facts which support that conclusion. More accurately stated, he has not even attempted to meet his specificity obligation.

Element No. 3 – In Connection With the Purchase or Sale of a Security

Spina has pled that he purchased securities. However, due to his complete failure to allege anything other than his <u>conclusion</u> that he had been defrauded, he has failed to allege that any material misrepresentations were made *in connection with* the purchase of a security. Accordingly, he has failed to plead element No. 3 as well.

Element Nos. 4 and 5 – Causation

The Third Circuit has described the causation elements of a §10b-5 claim as follows:

> Causation in the securities context is strikingly similar to the familiar standard in the torts context, but with different labels. In the securities realm, "but for" causation is referred to as "reliance, or transaction causation," and "proximate cause" is known as "loss causation." *See Newton II, 259 F.3d at 172-73*; *see also Bastian v. Petren Resources Corp., 892 F.2d 680, 683 (7th Cir. 1990)* (stating that "what securities lawyers call 'loss causation' *is* the standard common law fraud rule . . . merely borrowed for use in federal securities law cases") (emphasis in original); 3 Hazen, *The Law of Securities Regulation*, § 12.11[1].

*Berckeley Investment Group, Ltd. v. Douglas Colkitt*, 455 F.3d 195, 222 (3rd Cir. 2006)

Thus, causation under Rule 10b-5 is "two-pronged." *Daniel Mccabe v. Ernst & Young, LLP*, 494 F.3d 418 (3rd Cir. 2007) (3rd Cir. 2007)(quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 172 (3rd Cir. 2001)). A plaintiff must show both:

(1)   loss causation (i.e., that the fraudulent misrepresentation or omission actually caused the economic loss suffered); and

(2)   transaction causation (or "reliance") (i.e., that but for the fraudulent

27

misrepresentation or omission, the investor would not have purchased or sold the
security).

*Daniel Mccabe v. Ernst & Young, LLP, supra.* (citing *Newton v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.,* 259 F.3d at 172-73).

a)    <u>Loss Causation (Proximate Cause)</u>

Loss causation is a more exacting standard for a Section 10(b) plaintiff to meet. To prove
loss causation, the plaintiff must demonstrate "that the fraudulent misrepresentation
actually caused the loss suffered." *Newton II, 259 F.3d at 173*. Similar to the concept of
proximate cause in the tort context, loss causation focuses on whether the defendant
should be held responsible as a matter of public policy for the losses suffered by the
plaintiff. *Suez Equity Investors, 250 F.3d at 96*. Thus, "[t]he loss causation inquiry
typically examines how directly the subject of the fraudulent statement caused the loss,
and whether the resulting loss was a foreseeable outcome of the fraudulent statement." *Id.*
The United States Court of Appeals for the Seventh Circuit has succinctly explained that
the loss causation element requires the plaintiff to prove "that it was the very facts about
which the defendant lied which caused its injuries." *Caremark, Inc. v. Coram Healthcare
Corp., 113 F.3d 645, 648 (7th Cir. 1997)* (citing *LHLC Corp. v. Cluett, Peabody & Co.,
842 F.2d 928, 931 (7th Cir. 1988))*.

*Berckeley Investment Group, Ltd. v. Douglas Colkitt*, 455 F.3d at 222. *See also Daniel Mccabe*

*v. Ernst & Young, LLP,* 494 F.3d at 426 (to satisfy the loss causation requirement in a §10(b)

action, the plaintiff must show that the defendant misrepresented or omitted the very facts that

were a substantial factor in causing the plaintiff's economic loss).

The common law loss causation element is also codified as a requirement in the PSLRA:

> the plaintiff shall have the burden of proving that the act or omission of the
> defendant . . . caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. §78u-4(b)(4). *See also Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 208 n.15

(3rd Cir. 2006); *Daniel Mccabe v. Ernst & Young, LLP*, 494 F.3d 418 (3rd Cir. 2007).

A plaintiff "does not meet the loss causation element if he fails to prove that the drop in

the value of a security is related to the alleged misrepresentation. In that situation, it cannot be

said that the alleged misrepresentation proximately caused the decline in the security's value to

28

satisfy the element of loss causation." *Berckeley Investment Group, Ltd. v. Douglas Colkitt*, 455

F.3d at 223 (3rd Cir. 2006)(internal citations and quotations omitted).

In *Mccabe*, the Third Circuit described what is required to establish that a

misrepresentation or omission proximately caused an economic loss:

> The Court of Appeals for the Fifth Circuit has offered a concise statement of what is
> required to show that a misrepresentation or omission proximately caused an economic
> loss:
>
> > The plaintiff must prove . . . that the untruth was in some reasonably direct, or
> > proximate, way responsible for his loss. The [loss] causation requirement is
> > satisfied in a Rule 10b-5 case only if the misrepresentation touches upon the
> > reasons for the investment's decline in value. If the investment decision is induced
> > by misstatements or omissions that are material and that were relied on by the
> > claimant, but are not the proximate reason for his pecuniary loss, recovery under
> > the Rule is not permitted.
>
> *Huddleston v. Herman & MacLean, 640 F.2d 534, 549 (5th Cir. 1981), aff'd in part and
> rev'd in part on other grounds, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983). See
> also Berckeley, 455 F.3d at 222* ("[T]he loss causation element requires the plaintiff to
> prove 'that it was the very facts about which the defendant lied which caused its
> injuries.'") (quoting *Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th
> Cir. 1997))*. This approach has been advocated by some scholars, as well:
>
> > [I]f false statements are made in connection with the sale of corporate stock,
> > losses due to a subsequent decline in the market, or insolvency of the corporation
> > brought about by business conditions or other factors in no way relate[d] to the
> > representations will not afford any basis for recovery. It was only where the fact
> > misstated was of a nature calculated to bring about such a result that damages for
> > it can be recovered.
>
> W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 110 (5th ed. 1984). . . . .
> We believe this approach is consistent with our loss causation jurisprudence in *Berckeley*,
> *Newton*, and *EP Medsystems.*

*Daniel Mccabe v. Ernst & Young, LLP*, 494 F.3d at 428-429.

Here, Spina has not alleged loss causation for two reasons.  First, as with the other

elements, because he has failed to allege any material misrepresentation for the reasons discussed

above, he cannot plead that such misrepresentations caused any loss.

However, even if he had successfully pled that material misrepresentations had been made to him (presumably regarding the value of the merged entities), the Complaint is absolutely silent as to any loss in the value of a security caused by such misrepresentations, or as to any other loss caused by misrepresentations regarding the value of the stock in the merged entity.

Stated another way, the Complaint simply does not allege any loss. There are no allegations which demonstrate that Spina lost any money by agreeing to the merger. There are no allegations of (1) what Spina has paid in total to date for the RSE stock (as opposed to what he is required to pay in the future to retain the stock); (2) the amount of distributions he received by virtue of his ownership of RSE stock; (3) the pre-merger value of stock in either IRE or RSE; (4) the current value of RSE stock; and (5) the value of his IRE stock had he not agreed to the merger and held onto that stock.

It is simply not possible, based on the allegations in the Complaint, to conclude that Spina has lost any money due to his participation in the merger transaction. Accordingly, he has failed to plead facts which satisfy the loss causation element of his federal securities claim.

b)   Transaction Causation (Reliance)

> In order to establish reliance, or transaction causation, a *Section 10(b)* plaintiff must prove that "but for the fraudulent misrepresentation, the investor would not have purchased or sold the security." *Newton II, 259 F.3d at 172*. Stated differently, the plaintiff must prove that "but for the wrongful conduct, the transaction would not have gone through, at least in the form that it eventually took." 3 Thomas Lee Hazen, *The Law of Securities Regulation*, § 12.11[2] (5th ed. 2005); *see also Suez Equity Investors, L.P., Sei Assocs. v. Toronto Dominion Bank, 250 F.3d 87, 95-96 (3d Cir. 2001)* ("Transaction causation is based upon the plaintiff's reliance upon the defendant's deceptive statements or omissions; that is, but for such conduct by the defendant, the plaintiff would not have acted to his detriment.").

*Berckeley Investment Group, Ltd. v. Douglas Colkitt*, 455 F.3d at 222. *See also  Ronald Leder v. Jerome Shinfeld*,  2008 U.S. Dist. LEXIS 40925 (E.D. Pa. 2008)(citing *Tracinda Corp. v. DaimlerChrysler AG,* 364 F.Supp.2d. 362, 401 (D. Del. 2005)(a 10b-5 plaintiff must show that it

30

reasonably relied on the alleged misrepresentations or omissions that form the basis of its claim).

"The reasonable reliance element of a Rule 10b-5 claim requires a showing of a causal nexus between the misrepresentation and the Plaintiff's injury, as well as a demonstration that the Plaintiff exercised the due diligence that a reasonable person under all the circumstances would have exercised to protect his own interests." *AES Corp. v. The Dow Chemical Co.,* 325 F.3d 174, 178 (3rd Cir. 2003).

In *Straub v. Vaisman & Co.,* 540 F.2d 591 (3rd Cir. 1976), the Third Circuit set forth a list of factors that a court should consider in determining whether a plaintiff's reliance was reasonable. *Id.* at 598. Those factors include the plaintiff's opportunity to detect the fraud, the sophistication of the plaintiff, the existence of a longstanding business or personal relationship, and the plaintiff's access to the relevant information. *Id.*

In addition, when the pleading asserts a 10b-5 claim based on the plaintiff's reliance on a valuation provided by the defendant, and neither the complaint nor the documents attached thereto demonstrate that the defendant prevented or obstructed the plaintiff from conducting its own valuation, then the plaintiff has not pled reasonable reliance on the allegedly misrepresented value. *See Ronald Leder v. Jerome Shinfeld, supra.* (dismissing the 10b-5 claim for lack or reasonable reliance because there was "nothing in Plaintiffs' Complaint, or the documents attached to the Complaint, indicating that Defendants attempted to prevent Plaintiffs from conducting their own independent investigation").

Spina has failed to plead transaction causation because he has pled no facts which establish reasonable reliance on the unspecified misrepresentations he claims were made to him by unspecified individual(s) regarding the unspecified values of the two companies. He has also failed to plead why he did not obtain his own valuation for purposes of the merger. He has pled

no facts which establish that he could not obtain his own valuation or that he had no choice but to go through a merger transaction. In short, even if he had satisfied the material misrepresentation requirement (and he has not), he has not pled facts which show that he was justified in relying on those misrepresentations, or that he was prohibited from conducting his own due diligence before agreeing to the merger. Accordingly, he has failed to plead transaction causation.

Element No. 6 – Economic Loss

The final element is the requirement that a specific economic loss caused by the fraudulent conduct be alleged. Absent an actual monetary loss caused by the conduct complained of, there is no viable 10b-5 claim.

As discussed in the prior sections, Spina has entirely failed to plead an actual monetary loss from the alleged fraud. He has failed to plead the facts necessary to establish a loss because, if he truthfully pled the amount he received as a shareholder of RSE, it would be clear that he has suffered no loss whatsoever.

Spina's claim for federal securities fraud, accordingly, must be dismissed.

C.   Count II
     Violation of 15 U.S.C. § 78t(a) (Control Person)

Count II of the Complaint purports to allege a claim against only Robert Hepp for violation of Section 20(a) of the Securities Exchange Act of 1934 (i.e., "control person" liability). The allegations of Count II are that Hepp is a control person within the meaning of Section 20(a), and by virtue of his control of RSE, he violated Section 10(b). *See* Complaint at ¶¶82-83.

Section 20(a) of the Securities Exchange Act of 1934 creates a cause of action against individuals who exercise control over a "controlled person," including a corporation, that has

32

committed a violation of Section 10(b). *See* 15 U.S.C. § 78t(a); *Howard Charatz v. Avaya, Inc.*,

564 F.3d 242 (3rd Cir. 2009); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3rd

Cir. 2006); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 212 (3rd Cir. 2002).

Accordingly, liability under Section 20(a) is dependent on an underlying violation of Section

10(b) by the controlled person. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3rd Cir. 2004)

("[P]laintiffs must prove not only that one person controlled another person, but also that the

controlled person is liable under the Act." (internal quotation marks omitted)).

   For the reasons discussed previously, Spina's 10b-5 claim must be dismissed, therefore,

his claim for control person liability must be dismissed as well.

D.   Count III
     Violation of the Pennsylvania Securities Act

   Count III of the Complaint purports to allege a claim against the Hepp Defendants for

violation of Sections 201, 401, 403, 404, 405 and/or 503 of the Pennsylvania Securities Act, 70

P.S. §1-101, *et seq.* ("PSA").  In Count III, Spina repeats some of the general, nonspecific

allegations regarding the making of material misrepresentations and omissions, and then alleges

the following:

92.   The Hepp Defendants were issuers of securities in Pennsylvania.

93.   The Hepp Defendants violated Section 201 of the PSA, 70 P.S. §1-201, by failing
      either to register said shares of RSE or to qualify for an exemption from such
      registration requirements.

94.   As the direct and proximate result of the fraud and deceit of Defendants in direct
      contravention of Sections 201, 401, 403, 404, 405 and 503 of the PSA, Plaintiff
      has sustained damages for which the Hepp Defendants are liable, jointly and
      severally, to Plaintiff under 70 P.S. §§ 1-501 and 1-503, including the loss of his
      investment, tax liabilities, and the loss of investment opportunities and income.

Complaint at ¶¶92-94.

Section 501 of the PSA authorizes a private cause of action against anyone who sells a security in violation of §§401, 403 or 404 of the PSA. Section 401 of the PSA is Pennsylvania's equivalent of Section 10(b) of the Securities Exchange Act, and was enacted to address substantially the same wrongful conduct as Rule 10b-5. *Ronald Leder v. Jerome Shinfeld*, 609 F. Supp. 2d 386; 2009 U.S. Dist. Lexis 31943 (E.D. Pa. 2009). Section 503 of the PSA allows for joint and several liability for persons that violate Section 501. Thus, it appears that in Count III, Spina is attempting to allege civil liability under Section 501 for a violation of Section 401. In other words, he is purporting to allege a "state law 10b-5 claim". [6]

It has long been the practice of the courts in the Third Circuit to treat a Section 401 claim as requiring the same elements of proof as required under federal Rule 10b-5. *See, e.g., Ronald Leder v. Jerome Shinfeld,* 609 F. Supp. 2d 386; 2009 U.S. Dist. Lexis 31943 (E.D. Pa. 2009); *GFL Advantage Fund, Ltd., v. Colkitt,* 272 F.3d 189, 214 (3rd Cir. 2001)(holding that Section 401 "is modeled after Rule 10b-5 of the federal securities laws, and requires virtually the same elements of proof" (citing *Rosen,* 155 F. Supp. 2d at 321 n.14)); *Majer v. Sonex Research, Inc.,* 541 F. Supp. 2d 693, 712-13 (E.D. Pa. 2008) (same); *Fox Int'l Relations,* 490 F. Supp. 2d at 602 (same); *Joyce v. Bobcat Oil & Gas, Inc.,* 2008 U.S. Dist. LEXIS 27181, 2008 WL 919724 at pp.13-14 (M.D. Pa. 2008) (same); *Gilliland v. Hergert,* 2007 U.S. Dist. LEXIS 84508, 2007 WL 4104223 at pp.1-2 (W.D. Pa. 2007) (same); *Susquehanna Capital Group v. Rite Aid Corp.,* 2002 U.S. Dist. LEXIS 18290, 2002 WL 31528490 at p.3 (E.D. Pa. 2002) (same).

---

[6] The other provisions of the PSA cited in the Complaint have no bearing to the cause of action set forth in Count III. Section 201 of the PSA makes it unlawful to sell an unregistered security absent a statutory exemption, but there is no right to a private cause of action under the PSA for a violation of Section 201. Sections 403, 404 and 405 of the PSA apply to broker-dealers and investment advisors and are, therefore, irrelevant to the case at bar.

While Plaintiff's PSA claim may not be subject to the heightened pleading standard of the PSLRA, it still must comply with Rule 9(b)'s heightened pleading requirements. *Ronald Leder v. Jerome Shinfeld,* 609 F. Supp. 2d 386; 2009 U.S. Dist. Lexis 31943 (E.D. Pa. 2009); *Kevin Joyce v. Bobcat Oil & Gas, Inc.,* 2008 U.S. Dist. LEXIS 27181 (M.D. Pa. 2008); *Berk v. Ascott Inv. Corp.,* 759 F. Supp. 245, 262 (E.D. Pa. 1991); *Rosenbaum & Co. v. H.J. Myers Co.,* 1997 U.S. Dist. LEXIS 15720, 1997 WL 689288 at p.3 (E.D. Pa. 1997).

Spina's state law securities fraud claim suffers from the same lack of specificity as his federal securities law claim. Accordingly, for reasons discussed previously with respect to Count I, the claim he is attempting to set forth in Count III should be dismissed for lack of specificity as well.

In addition, the relief sought in Count III is also inappropriate. Pursuant to Section 501, the only damages available in a private cause of action for violation of the PSA is recovery of the consideration paid for the security, plus interest, less any income and distributions receive due to the ownership of the secure, plus interest. Therefore, if Spina prevailed in proving that the Hepp Defendants violated the PSA, Spina would be entitled to repayment of any funds he paid to the Hepp Defendants for his shares of RSE, and they would be entitled to any distributions Spina received from RSE as a shareholder. All other forms of relief requested in Count III are not authorized under the PSA and should therefore be dismissed.

E.     Count IV
       Violation of the Pennsylvania Securities Act (Control Person Liability)

Count IV of the Complaint purports to allege a claim against Hepp for violation of the Pennsylvania Securities Act, 70 P.S. §1-101, *et seq.*, as a "control person". Unlike §20(a) of the Securities Exchange Act, the PSA does not contain any provision establishing "control person" liability. Nor is there any reported decision supporting such concept. Accordingly, Count IV

must be dismissed.

F.    Statute of Limitations – Federal Securities Claims

Assuming, *arguendo*, that Spina had adequately pled a federal securities fraud claim, that

claim would be barred by the applicable statute of limitations.  A private right of action that

involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory

requirement concerning the securities laws, as defined in Section 3(a)(47) of the Securities

Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought no later than the earlier of:

> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.

28 U.S.C. § 1658(b).  *See also Theodore Cohen v. Andrew Telsey*, 2009 U.S. Dist. LEXIS

101696 (D.N.J. 2009).

The merger was effective December 31, 2011.  Although the Complaint does not state

when the unspecified misrepresentations were made to Spina, it is alleged that they were made

prior to the merger and that he relied upon them in agreeing to the merger.  Spina also alleges the

the value the two entities (IRE and pre-merger RSE) prior to the merger was, if operated as a

single concern, $2.2 million.  Complaint at ¶37.  He further alleges that the value of RSE

immediately after the merger was the same $2.2 million.  Complaint at ¶38.

Therefore, according to the allegations of the Complaint, Spina was on notice of the value

of these companies as of year end 2011.  Whatever was misrepresented to him prior to that day,

as of that date he knew or had reason to know that such statements were false, otherwise he

could not have determined what the merged entity's value was as of that date.

Accordingly, Spina had two years (until year end 2013) to bring a claim for federal

securities fraud.  He did not file a Writ of Summons until May 2014.  His federal securities fraud

claim is, therefore, barred by the applicable statute of limitations.

G.      Statute of Limitations – Pennsylvania Securities Claims

Pennsylvania's statute of limitations for liability under Section 501 is the lesser of one

year from the time that plaintiff knew or should have known of the misrepresentation, or five

years from the date of the misrepresentation. *Kevin Joyce v. Bobcat Oil & Gas, Inc.,* 2008 U.S.

Dist. LEXIS 27181 (M.D. Pa. 2008).  As discussed above, Spina knew or should have known

that he had been misled by some unspecified misrepresentations by the time he was able to

determine the value of the two companies, which according to the Complaint was December 31,

2011.  His PSA claim is therefore time barred.

H.      Count V
        Fraud and Intentional Misrepresentation

Count V of the Complaint purports to allege a claim against the Hepp Defendants for

common law fraud.  The relevant allegations in this Count are:

101.    Each of the Hepp Defendants was the agent of each other Hepp Defendant with
        both actual and apparent authority to make representations to Plaintiff as alleged
        herein, and each was acting within the scope of said authority when he, she or it
        made each of the misrepresentations and omissions alleged herein.

102.    Said representations and omissions were intended to benefit, and did benefit, all
        of said Defendants.

103.    Said Defendants, directly or through their respective agents, intentionally made
        untrue statements of material fact and omitted to state material facts necessary to
        make other statements not misleading, with the intent, knowledge and expectation
        that Plaintiff would rely thereon.

104.    The Hepp Defendants knew, at the time said misrepresentations and omissions
        were made, that Defendants Robert Hepp and Cynthia Hepp would continue to
        loot RSE for their own personal gain, and intentionally and maliciously failed to
        disclose that fact to Plaintiff in December, 2011 and thereafter.

105.    Each of the Hepp Defendants, directly or through his, her or its respective agents,
        permitted said promises to be made with the purpose and intent of defrauding
        Plaintiff and obtaining money and stock in exchange for shares in RSE.

106.    Plaintiff did not know, and had no reason to know, that he was being fraudulently
        overcharged for shares of RSE, and Plaintiff relied upon the Hepp Defendants'

assurances, made directly or through agents, that the value that Plaintiff was tendering for his shares of RSE was fair and reasonable.

107.    Plaintiff reasonably and justifiably relied upon the misstatements, omissions and misrepresentations of value described herein.

108.    Plaintiff suffered pecuniary loss in an amount in excess of $50,000, as a proximate result of such misstatements, omissions and misrepresentations.

Complaint at ¶¶101-108.  As with the rest of the Complaint, these allegations are entirely conclusory.

In order to plead a claim for common law fraud, Spina must allege, with specificity:

(1)    a representation;

(2)    which is material to the transaction at hand;

(3)    made falsely;

(4)    with knowledge of its falsity or recklessness as to whether it is true or false;

(5)    with the intent of misleading another into relying on it;

(6)    justifiable reliance on the misrepresentation; and

(7)    a resulting injury proximately caused by the reliance.

*Ronald Leder v. Jerome Shinfeld*, 609 F. Supp. 2d 386; 2009 U.S. Dist. Lexis 31943 (E.D. Pa. 2009).  *See also Overall v. Univ. of Pa.,* 412 F.3d 492, 498 (3rd Cir. 2005); *Jefferies v. Ameriquest Mortgage Co.,* 543 F. Supp. 2d 368, 386 (E.D. Pa. 2008); *Gibbs v. Ernst,* 647 A.2d 882, 889 (Pa. 1994).  As with statutory claims under Rule 10b-5 and the Pennsylvania Securities Act, allegations of common law fraud are subject to Rule 9(b)'s requirement of pleading with particularity.  *Ronald Leder v. Jerome Shinfeld, supra.*

The only allegations that relate to anything factual in this Count are Spina's conclusions that the Hepps "looted the corporation" and that Spina was "overcharged for his shares in RSE". That's it.

Spina's common law fraud claim must be dismissed for the same reasons as his statutory securities fraud claims.  There are no specific facts alleges to satisfy **any** of the seven elements he must plead.  From the allegations in the Complaint, it is impossible to determine with any specificity: what the misrepresentations were and whether they were material (Elements 1 and 2); whether they were false and why (Element 3); who made the misrepresentations and whether the maker knew of their falsity and intended to mislead Spina into relying on them (Elements 4 and 5); whether Spina justifiably relied on the unspecified misrepresentations (Element 6); and whether they caused loss to Spina and howsuch loss was caused (Element 7).  Accordingly, Count V must be dismissed.

I.      Count VI
        Negligent Misrepresentation

Count VI of the Complaint purports to allege a claim against the Hepp Defendants for negligent misrepresentation.  The relevant allegations in this Count are:

112.    By virtue of their special relationships with Plaintiff as joint shareholders in a close corporation (IRE) and as joint venturers in a cooperative commercial enterprise (RSE and IRE together), each Hepp Defendant was under a duty to exercise due care in communicating with Plaintiff, or authorizing others to communicate with Plaintiff, concerning facts related to his investment in RSE.

113.    Each of the Hepp Defendants, directly or through agents, misrepresented to Plaintiff the relative values of RSE and IRE, and the true value of the shares in RSE to be transferred to Plaintiff.

114.    Each of the Hepp Defendants failed to exercise reasonable care or competence in obtaining or communicating to Plaintiff accurate information relating to the relative values of RSE and IRE, and the true value of the shares in RSE to be transferred to Plaintiff.

115.    The aforesaid representations, as supplied by said Defendants for the guidance of Plaintiff, were false.

116.    Each of the Hepp Defendants had a duty to provide truthful and accurate information to Plaintiff, and said Defendants materially breached such duty.

As with the other Counts, these allegations are entirely conclusory.

A negligent misrepresentation claim has four elements:

(1)   a duty recognized by law, requiring the actor to conform to a certain standard of conduct for protection of others against unreasonable risks;

(2)   failure to conform to the standard required;

(3)   a causal connection between the conduct and resulting injury; and

(4)   actual loss.

*Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 554 (E.D. Pa. 2006).

Proximate cause is an essential element of both fraudulent misrepresentation and negligent misrepresentation claims. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3rd Cir. 2000).  It is also the same causation that is required for both the state and federal securities fraud claims.  *See Daniel Mccabe v. Ernst & Young, LLP,* 494 F.3d 418, 438-39 (rejecting fraud and negligent misrepresentation claims under New Jersey law on the same basis that the 10b-5 claim was rejected, an inadequate allegation of proximate cause); *Kevin Joyce v. Bobcat Oil & Gas, Inc.,* 2008 U.S. Dist. LEXIS 27181 (M.D. Pa. 2008).

Here, the allegations are so general it is impossible to identify what exactly was misrepresented to Spina and who made the misrepresentations.  Even if those elements were adequately pled, for the reasons discussed previously, there has been no allegation of losses proximately caused by the unspecified misrepresentations.  Accordingly, Count VI, along with Counts I through V, must be dismissed.