A.      Plaintiff Has Failed To Establish A Credible Basis
For Investigating The Management Activities From 2011 to Date

While the desire to investigate possible wrongdoing or mismanagement can be a proper purpose, a plaintiff must do more than merely assert that purpose in a conclusory fashion or base that purpose on mere suspicion or curiosity. To obtain the right to inspect documents for that purpose, the stockholder must present "some evidence" to suggest a "credible basis" from which a court could infer possible mismanagement that would warrant further investigation." *City Of Westland Police & Fire Retirement System v. Axcelis Technologies, Inc.,* 1 A.3d 281, 287 (Del. 2010). The plaintiff must offer more than "suspicion or curiosity" to meet the credible basis requirement:

> [T]he "credible basis" standard [ ] strik[es] the appropriate balance between (on the one hand) affording shareholders access to corporate records that may provide some evidence of possible wrongdoing and (on the other) safeguarding the corporation's right to deny requests for inspection based solely upon suspicion or curiosity. Thus, a "mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad §220 inspection relief.

*Westland Police & Fire Retirement System*, 1 A.3d at 287 (footnotes omitted) (quoting *Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 118, 122 (Del. 2006)). A "mere statement of a purpose to investigate possible general mismanagement" is not sufficient. *Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 123 (Del. 2006).

If the plaintiff's allegations are mere speculation, fueled by suspicion, and motivated by an improper purpose to harass the Company or force a resolution not required by law, the request to inspect should be denied. *See Coit v. Am. Century Corp.*, 1987 Del. Ch. LEXIS 407, at p.7 (Del. Ch. Mar. 20, 1987) ("[s]hould [the corporation] succeed in proving that plaintiff's purpose is one of harassment, the Court would surely be empowered to deny the relief requested").

Nor does the plaintiff's personal disagreement over the business judgment of the corporation create the credible basis sufficient to authorize a corporate document inspection. *See Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 120 (Del. 2006)("the large amount of compensation" paid to corporate executives was not a credible basis for an inference of possible wrongdoing); *Mattes v. Checkers Drive-In Restaurants, Inc.*, 2001 Del. Ch. LEXIS 47, at p.17 (Mar. 28, 2001) (finding plaintiff's demand was based on "disagreement or even simple misunderstanding over basic business decisions, and lacks the credible support necessary to justify the broad inspection plaintiff seeks"); *Central Laborers*, 2012 Del. LEXIS 285, at p.13 (citing *Seinfeld*, 909 A.2d at 118, 122 and stating that directors have the right to "manage the business of the corporation without undue interference from stockholders").

Finally, even if the plaintiff could establish mismanagement by the officers or directors, if the ability to obtain relief for such mismanagement is barred by the applicable statute of limitations, the request to inspect records will be denied. The Delaware Courts have repeatedly refused to permit inspection of books and records to investigate time barred claims. *See Graulich v. Dell Inc.*, 2011 WL 1843813 (Del. Ch. May 16, 2011) (refusing to permit inspection to investigate mismanagement that occurred more than three years before action filed); *Sutherland v. Sutherland*, 2010 WL 1838968, at p.8 n.57 (Del. Ch. May 13, 2010)("This Court has already determined that all claims arising before August 31, 2001, three years before the §220 action was initiated, are time barred.").

Here, Spina identifies two corporate acts of purported mismanagement. The first is the Corporation's attempt to sell the business to Stellar. The second is the Dellose Payment.[9]

Whether or not Spina ever agreed to the Stellar Deal (and he did), and whether or not his motivation for deciding to ultimately oppose that deal was due to his dissatisfaction with the terms of Stellar's employment offer, RSE's decision to enter into the Stellar Deal was a business decision clearly within the province of its directors and shareholders. Stated another way, the fact that Spina does not agree with that decision does not elevate it to a credible basis for engaging in the inspection of documents due to mismanagement. The "business judgment rule" prohibits prolonged litigation over such matters. *See Cuker v. Mikalauskas,* 692 A.2d 1042, 1045-46 (Pa. 1997).

Moreover, as has been previously discussed in papers filed with the Court; **the Stellar Deal was terminated**. There is no pending sale of anything to that company. RSE is in the process of liquidating its assets, and Stellar has nothing to do with that process. If Spina wants to bid on those assets, he is free to do so. Accordingly, Spina's purported interest in investigating the aborted Stellar Deal is not a proper purpose under §1508.

The second purported stated basis for inspecting documents due to mismanagement is the Dellose Payment. As discussed above, Spina is simply mischaracterizing that payment as something illicit, which it was not, in order to create a factual dispute for litigation purposes (even though he is jeopardizing his ownership interest in doing so). In that regard, attached as

---

[9] The other purported purpose of inquiry is generically characterized as the need to investigate the propriety of expenditures and acts of self-dealing since 2011. These assertions are entirely lacking in specificity and, therefore, do not constitute a credible basis for a document inspection. Otherwise, every shareholder would have a right to a virtually unlimited records inspection by just reciting those generic purposes. In addition, any claim for relief arising from any acts of mismanagement more than two years old would be time barred.

Exhibit "A" is a verification of Robert Hepp which refutes Spina's version of events. The other two shareholders will also refute Spina's allegations on this issue if need be.

Moreover, even if the Dellose Payment had been improper, that payment was made over two years ago and, therefore, any cause of action arising from that event is time barred. Accordingly, the Dellose Payment cannot constitute a credible basis for a document inspection. *See Graulich v. Dell Inc., supra.; Sutherland v. Sutherland, supra.*

Spina's true purpose in seeking this document inspection is not to uncover mismanagement. He knows how the company was managed since the merger in 2011. His true purpose in seeking the right to inspect is to require the Corporation to expend its net income on prolonged frivolous litigation until and unless he is relieved of his Stock Debt and receives more from the liquidation than he is legally entitled to receive.

Stated another way, Spina intends to use this litigation to either extort a settlement or deplete the Corporation's net income if he cannot get his way. That is not a proper purpose for a §1508 document inspection. *Klein v. Scranton Life Insurance Co.*, 139 Pa. Super. 369, 376, 11 A.2d 770, 773 (Pa. Super. 1940)(an inspection of corporate records should not be permitted for "speculative purposes" or to. . . gratify idle curiosity or to aid a blackmailer . . . ."). Accordingly, Spina has failed to establish a proper purpose for a §1508 document inspection.

      B.      Plaintiff Has Failed To Establish A *Bona Fide* Expectation And Ability To Sell His Stock

Plaintiff's second purported purpose for seeking to inspect corporate documents is to determine the "fair market value" of his stock in the Corporation. This purported purpose is simply not believable for the reasons discussed below.

The desire to value one's shares of corporate stock can be a proper purpose **under the right circumstances**. However, when there is no plausible market for the sale of such shares, or

17

other legitimate reason for valuing those shares, that stated purpose is simply not *bona fide*. *See Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987) ("Without a showing of a present need for such a valuation, a mere statement of that purpose, though valid in law, might not be *bona fide* in fact".).

If a shareholder were entitled to inspect corporate records simply by stating that he/she desired to value the stock, then every shareholder would be entitled to a corporate records inspection at any time. That cannot be a proper purpose under §1508. *See Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987) ("it is not sufficient for [the plaintiff] merely to assert that it would like to value its [shares of the corporation's] stock").

In the case at bar, RSE is in the process of going through a voluntary dissolution. There is not, and cannot be, any plausible market for the shares of this company. It is going out of business.

Moreover, a revue of the corporate records will not enable a determination of the value of Spina's RSE stock for two reasons. The formula for determining the value of Spina's RSE stock is simple to calculate. It is equal to:

% of ownership interest  x  net income (after liquidation and payment to all creditors).

It is, however, impossible to calculate either of these numbers at this time, and the corporate records now in existence are irrelevant to their calculation.

The size of Spina's ownership interest at the time distribution will be made to the shareholders of the net income left in the company (if there is any) will depend upon whether Spina has defaulted on the Notes before then. That question cannot be answered until it is determined whether (a) the Dellose Payment is credited toward the Stock Debt, and (b) whether

the remaining payments due on the Stock Debt have been made. An inspection of the corporate records cannot now assist Spina in any manner in making that determination.

Nor will the inspection of corporate records at this date enable Spina to determine what the future net income of the company will be after liquidation and payment to all creditors.

Therefore, even if there was some third party interested in buying his shares (and there is not), at present a corporate records inspection cannot possibly enable him to determine the value of Spina 's ownership interest or the net income that will be available for distribution in the future. At present, it is simply impossible to determine those numbers, and no amount of corporate document inspection at this time will change that reality.

Accordingly, Spina's assertion that he needs to inspect records to determine the "fair market value" of his stock is specious; and it is certainly not a proper purpose under §1508.

3. Plaintiff's Request To Inspect Is Unreasonably Broad And Seeks Documents Unrelated To Any Proper Purpose

A §1508 inspection request must be "proper and reasonable" *Goldman v. Trans-United Industries. Inc.*, 171 A.2d 788, 790 (Pa. 1961). Again, Delaware's law is similar. *See Espinoza v. Hewlett Packard Co.*, 32 A.3d 365, 371 (Del. 2011)(the "books and records sought for inspection must be "essential to [the] accomplishment of the stockholder's articulated purpose for the inspection."); *see also Sahagen Satellite Tech. Group, LLC v. Ellipso, Inc.*, 791 A.2d 794, 798 (Del. Ch. 2000) (rejecting the demand for a broad-ranging inspection as "simply a demand for a fishing license").

A shareholders right to inspect records is not intended to be as broad as the rights afforded a litigant under the discovery rules:

> The scope of the production which the [Delaware] Court of Chancery ordered in this case is more akin to a comprehensive discovery order under Court of Chancery Rule 34 [the

19

> Delaware discovery rule for production of documents] than a Section 220 order. The two procedures are not the same and should not be confused. A Section 220 proceeding should result in an order circumscribed with rifled precision. Rule 34 production orders may often be broader in keeping with the scope of discovery under Court of Chancery Rule 26(b).

*Security First Corp. v. U.S. Die Casting and Dev. Co.*, 687 A.2d 563, 570 (Del. 1997); *see also Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000)("plaintiffs may seek relevant books and records of the corporation under Section 220 of the Delaware General Corporation Law, if they can ultimately bear the burden of showing a proper purpose and make specific and discrete identification, with rifled precision, of the documents sought."); *Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 118, 122 (Del. 2006) (where a shareholder has a proper purpose, inspection rights should be exercised "without disrupting corporations' orderly conduct of business and without inappropriately interfering with corporate decision-making").

In short, the scope of a corporate records inspection should be limited to books and records "necessary and essential" to the proper purpose. *See Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002); *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 570 (Del. 1997).

Here, Spina has identified thirteen categories of documents he wishes to inspect. The first four categories are the following:

1. All original minutes, resolutions, notices, consents in writing, agendas, proposals or other documents relating to any special, regular or annual meeting of RSE's Board of Directors since December 31, 2011;

2. All original minutes, resolutions, notices, consents in writing, agendas, proposals or other documents relating to any special, regular or annual meeting of RSE's Shareholders since December 31, 2011;

3. The original by-laws of RSE and any amendment(s) thereto; and

4. RSE's Share Register.

These documents are largely irrelevant to Plaintiff's stated purposes for inspecting records, and those documents which may have some relevance are already in Plaintiff's possession. *See* June 20, 2014 letter to Plaintiff's counsel identifying documents previously provided to Plaintiff, attached as Exhibit "B". Accordingly, production of these documents should not be required.

Plaintiff's fifth category of documents pertains to Spina's so-called offer to acquire the assets of RSE:

> 5. All documents that evidence or relate to RSE's evaluation, analysis or response to [Spina's] offer to purchase RSE's assets for $500,000 pursuant to [Spina's] counsel's letters to RSE's counsel dated May 14, 2014, May 16, 2014 and May 30, 2014.

In his Complaint, Spina refers to the Corporation's rejection of his offer to purchase the assets of the corporation as evidence of mismanagement or some form of the nefarious conduct. For the reasons discussed below, it is not as a matter of law. Therefore, it is not relevant to his shareholder interest and, by definition, not a reasonable inspection request.

The sale of a business is certainly the type of decision protected under the Business Judgment Rule. Under that rule, the corporation's decision is presumed to be made:

> on an informed basis, in good faith and the best interests of the company. on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts regarding the presumption.

*Cuker v. Mikalauskas,* 692 A.2d 1042, 1045-46 (Pa. 1997). Therefore, Spina has a high burden to meet the in order to establish that the denial of his offer establishes a credible basis for an investigation of mismanagement. He cannot meet this burden for the reasons discussed below.

On or about May 8, 2014, after more than four months of negotiations with Stellar, RSE gave notice to Spina that a shareholder's meeting would be conducted on May 19, 2014, to vote on the sale of the business to Stellar. In response, five days before that scheduled meeting,

21

Spina's counsel sent a letter to RSE's counsel which contained an offer to purchase RSE's assets for $500,000 (the "Spina Offer"). *See* Letter of May 14, 2014 at page 3, attached as Exhibit "C". Prior to sending this last minute offer, Spina had shown no interest in acquiring the assets of RSE.

The Spina Offer was clearly made for litigation purposes and was not a serious offer. The timing of the Spina Offer alone was reason enough to reject it. To properly consider the Spina Offer, RSE would require significantly more information, and would also have to delay the acceptance of the Stellar Deal, which could result in Stellar withdrawing its offer. Simply put, under the Business Judgment Rule, RSE would have been justified in rejecting the Spina Offer based solely on the timing of that offer.

Nevertheless, the next day RSE's counsel sent a letter requesting additional information regarding the Spina Offer. *See* Letter of May 15, 2014 attached as Exhibit "D". That letter requested the following information:

- The source of funding of Mr. Spina's offer, including the identity of any third parties that may be involved;

- Confirmation that his offer includes the purchase of RSE's accounts receivable ;

- The proposed method by which Spina intended to provide professional engineering services following sale (Spina is not an engineer);

- The proposed retention of the current RSE employees (excluding the shareholders) following sale; and

- The specific "ancillary documents" contemplated as part of the Asset Purchase Agreement you reference as a condition of Closing, particularly any post-Closing employment or consulting agreements which might be offered to current Board members, and specifically whether restrictive covenants of any kind would be imposed, regardless of employment or consulting offers.

In response to this request for some basic information needed to even begin to analyze the Spina Offer, Spina's counsel sent a letter on May 16, 2014 which was largely nonresponsive (and exceedingly snarky). A copy of that letter is attached as Exhibit "E". The May 16th letter from Spina's counsel confirmed that the Spina Offer was not serious, and was simply part of a litigation strategy.

Aside from the timing of the Spina Offer, based on the information provided and not provided by Spina, the Board of RSE had numerous concerns with his offer, including, but not limited to, the following:

a) No information was provided regarding the funding to enable RSE to determine if Spina was even capable of closing the deal;

b) Inadequate and ambiguous information was provided regarding whether or not the Spina Offer included the purchase of RSE's receivables (which the Stellar Deal did not);

c) No information was provided regarding how Spina would finance the business operations upon acquisition (i.e., payroll and other operating expenses);

d) No information was provided as to how Spina would be able to establish vendor accounts (which require security); and

e) No information was provided as to whether and how Spina would obtain a professional engineer (which would be necessary to conduct business in a manner which would keep the former RSE employees employed).

In other words, when questioned on the particulars of his specious last minute offer, Spina's response was essentially "it's none of your business".

Clearly, this was not a real offer; it was a tactic employed for use in his forthcoming litigation. Under these circumstances, it is beyond the pale to suggest that RSE's rejection of the

Spina Offer provides any basis for investigating mismanagement under §1508. Therefore, Spina should not be permitted to conduct an investigation of his fifth category documents.

The sixth category of documents Spina seeks to inspect is the following:

> 6. RSE's bank statements and cancelled checks since December 31, 2011.

Needless to say, this is an overly broad and wide ranging request for documents that are unrelated to his stated purpose. It is nothing more than a fishing expedition to look for something to support his otherwise unsubstantiated accusations in this lawsuit. Therefore, Spina should not be permitted to conduct an investigation of his sixth category documents.

The seventh category of documents Spina seeks to inspect is the following:

> 7. Credit card statements since December 31, 2011 for accounts in the name of RSE, Robert Hepp II, Cynthia Hepp or Kenneth Philo for purchases of goods or services paid by RSE, either directly or through reimbursement.

The documents described here are not even documents of the Corporation. They are the shareholders' documents. In addition, this category seeks documents unrelated to his stated purpose. It, too, is a fishing expedition. Therefore, Spina should not be permitted to conduct an investigation of his seventh category documents.

The eighth category of documents Spina seeks to inspect is the following:

> 8. Invoices, contracts, work orders or other documents (including, without limitation, cancelled checks and credit card statements) relating to any services provided by or materials purchased from Dellose Construction Services, Inc. on behalf of RSE or any of its shareholders.

For the reasons previously discussed above, the Dellose Payment is not a credible basis for authorizing a corporate records inspection under §1508. Spina must do more than simply assert revisionist history before he is entitled to engage in such inspection. Spina cannot and will not be able to support his accusation that the Dellose Payment was anything other than an expensive perk given to him by the other shareholders, which he is now mischaracterizing for

24

purposes of his litigation goals. His lack of gratitude is appalling. Accordingly, Spina should not be permitted to conduct an investigation of his eighth category documents.

The ninth category of documents Spina seeks to inspect is the following:

> 9. Invoices, contracts or other documents (including, without limitation, cancelled checks, credit card statements and certificates of title) relating to (a) the purchase of a Lincoln automobile with RSE funds on or around April 11, 2014, and (b) the recent sale of RSE's blue Ford pickup truck.

Spina has provided absolutely no information which associates these two vehicles with his stated purpose for seeking to inspect documents under §1508. Moreover, RSE did not purchase a Lincoln automobile on or around April 2014, nor were its funds used to do so. Regarding the Ford pickup truck, RSE assumes Spina is referring to the Ford F-150 which has over 200,000 miles on it. To file a federal lawsuit for purposes of seeking authorization to investigate the sale a pickup truck with over 200,000 miles on it is utterly ridiculous.[10]

Therefore, in this request, Spina is seeking to inspect documents relating to a nonexistent corporate asset, and a corporate asset of extremely little value. This request clearly shows that Spina is simply throwing up anything he can and hoping it sticks in order to prolong this litigation. Accordingly, Spina should not be permitted to conduct an investigation of his ninth category documents.

The tenth category of documents Spina seeks to inspect is the following:

> 10. Executed copies of that certain Asset Purchase Agreement ("Agreement") between RSE and Stellar Refrigeration Services, Inc. ("Putative Stellar Transaction"), together with (a) all exhibits to that Agreement; (b) all documents referenced in the Agreement for execution before, at or after the Closing under the Agreement; (c) all employment agreements, consulting agreements or other contracts either entered into or to be entered into by any RSE shareholder and Stellar Refrigeration Services, Inc. (or any affiliate thereof); (d) any other contracts arising out of or relating to the Agreement, or (e) any amendment(s) to the foregoing.

---

[10] The Ford truck was sold to an employee of RSE for a modest sum of money.

25

This category seeks the documents related to the Stellar Deal. As discussed previously, the Stellar Deal is dead due to Spina's tortious interference with that deal. Therefore, this issue is not a credible basis for conducting an investigation under §1508. In addition, Spina has been previously provided with all of these documents with the exception of the employment offers tendered to Philo and R. Hepp. Those documents have no relevance to Spina's right to inspect under §1508 (and no relevance to his underlying claims in the lawsuit). Accordingly, Spina should not be permitted to conduct an investigation of his tenth category documents.

The eleventh category of documents Spina seeks to inspect is the following:

> 11. Copies of all Pennsylvania Exemption Certificates ("Exemption Certificates") delivered by RSE since January 1, 2012, to any person, on Form REV-1220 or otherwise; copies of documents identifying the persons or entities that received Exemption Certificates from RSE since January 1, 2012; and, as applicable, copies of applications for or grants of an Exemption Number by the Pennsylvania Department of Revenue for purposes of application of the Pennsylvania Sales Tax, 72 P.S. Sec. 7201, *et seq*.

Spina has failed to offer any explanation as to how such Exemption Certificates are relevant to this Motion or to his lawsuit. More significantly, RSE does not have, and has never had, a tax exemption from the Commonwealth of Pennsylvania. Accordingly, Spina should not be permitted to conduct an investigation of his eleventh category documents, as none exist.

The twelfth category of documents Spina seeks to inspect is the following:

> 12. Engagement letters or agreements with, and invoices or statements from, any law firm or lawyer where RSE has agreed to pay legal fees for any matter involving RSE and/or any of its shareholders since December 31, 2011, as permissibly redacted under any bona fide privilege.

This document request seeks privileged information wholly irrelevant to Spina's stated purpose for a document inspection under §1508, and wholly irrelevant to the claims in his lawsuit. Accordingly, Spina should not be permitted to conduct an investigation of his twelfth

category documents.

The thirteenth and final category of documents Spina seeks to inspect is the following:

13. All Records described in 1-8 above in existence since January 1, 2008 for the corporation formerly known as Industrial Refrigeration Services and Engineering, Inc. ("IRSE") prior to its merger into RSE on December 31, 2011, which Records RSE acquired by operation of law.

This overly broad and wide ranging request for documents is unrelated to his stated purpose, and is nothing more than a fishing expedition to look for something to support his otherwise unsubstantiated accusations in this lawsuit. Therefore, Spina should not be permitted to conduct an investigation of his thirteenth category documents.

WHEREFORE, Defendant, RSE, respectfully requests this Court to deny Plaintiff's Motion.

JACOBS LAW GROUP, PC

Dated: August 13, 2014

Neal A Jacobs, Esq.  I.D. #41918
Richard E. Miller, Esq. I.D. #46451
2005 Market Street, Suite 1120
Philadelphia, Pa. 19103
Phone: (215) 569-9701

Attorneys for Refrigeration, Service and Engineering, Inc.