EXHIBIT "E"

LAW OFFICES

# HENRY IAN PASS

SUITE 700A
3 BALA PLAZA EAST
BALA CYNWYD, PA 19004-3492
(610) 660-8001 • Fax (610) 660 8004

ADMITTED TO PRACTICE IN
PENNSYLVANIA AND MASSACHUSETTS

E-MAIL: hip@hipesq.com
WEBSITE: www.hipesq.com

May 16, 2014 [Revised]

*VIA E-MAIL, FAX AND OVERNIGHT COURIER*

Joseph K. Koury, Esq.
O'Donnell, Weiss & Mattei, P.C.
41 East High Street
Pottstown, PA 19464-5426
E-mail: jkkoury@owmlaw.com

Re:   Refrigeration, Service and Engineering, Inc./Tom Spina

Dear Joe:

I returned to the office from court this afternoon to find your letter, received in my office by fax and e-mail today but dated yesterday, May 15th, 2014, purportedly authored by you on behalf of RSE's putative board of directors ("Putative Board").

Based upon the letter, we can only conclude that you and your law firm, O'Donnell, Weiss & Mattei, P.C. ("OWM") have neither withdrawn nor will be withdrawing any time soon from the conflicted representation of RSE addressed in my letter of May 13, 2014. Consequently, unless and until OWM is disqualified or voluntarily withdraws, I will, without prejudice to or waiver of all of Tom Spina's rights and remedies, continue to communicate with you and Gary Stein as counsel for RSE under applicable rules.

While the majority of your letter's requests for clarification manifest a disturbing disregard for the dispositive principles governing the Putative Board's comparison of Tom Spina's proposed purchase terms to those of Stellar, please be aware of the following:

(i)   *Source of Funding* - Unless you are questioning the legality of the origin of Mr. Spina's purchase funds under federal or state statutes or regulations, then there is literally no relevance to your aberrant inquiry. Suffice it to say, RSE will receive the purchase price in cash (through either a bank check or federally wired funds) at closing. Oddly, and as we discussed previously, we are not aware of any such inquiry to Stellar, including, without limitation, literally any underwriting of the purchasing entity (Stellar Refrigeration Services, Inc.) to pay for the significant installment payments under the last draft of the proposed asset purchase agreement draft dated April 23, 2014 between Stellar and RSE provided to Tom Spina ("Stellar Offer") attached hereto. Additionally, although another irrelevant red herring request, the acquiring entity to be formed will be owned by Tom Spina

Joseph K. Koury, Esq.
May 16, 2014
Page 2

    (ii)   *RSE Accounts Receivable* – As was self-evident in my May 13th letter, other than the increased purchase price and enhanced payment terms, the proposed asset purchase terms proposed by Tom Spina mirrored those expressly stated in the Putative Notice of May 8th applicable to the Stellar Offer, which notice is devoid of any reference to accounts receivable. However, it is my client's intent for the acquiring entity to acquire RSE accounts receivable under the same terms and conditions as set forth in the Stellar Offer, including the Section 11.12 exclusions.

    (iii)   *Use of Engineering in Company Name After Purchase* - At Closing, RSE will be provided with any requisite information to demonstrate the acquiring entity's ability to use the name engineering and/or provide professional engineering services post closing.

    (iv)   *Non-Shareholder RSE Employees* – Tom Spina currently intends to offer positions with the acquiring entity to all non-Shareholder RSE employees as well as Ken Philo. As with any potential acquirer, including Stellar, all rights and decisions relating to such employment are reserved.

    (v)   *Ancillary Documents* – While it is intended to have all of the terms and conditions subsumed within one definitive asset purchase agreement document between all parties, there are, of course, likely to be ancillary documents either referred to in or included as exhibits to the definitive agreement. These typically include, *inter alia*, (i) a bill of sale, (ii) a real estate lease assignment and landlord's consent, (iii) contract assignments and consents, closing/adjustment statement, bring-down disclosures, and UCC termination statements, to the extent applicable. In fact, among other glaring deficiencies, the Stellar Offer sorely fails to even mention any of the foregoing. As the second Whereas clause refers to non-competition agreements of certain of RSE's shareholders (Robert Hepp, Cynthia Hepp and Ken Philo), there will, of course, be additional ancillary documents, if not otherwise in the definitive agreement, subsuming the foregoing.

Your letter confirms that the putative special meeting of shareholders will proceed on May 19, 2014 at 4:00 p.m. as previously announced in the Putative Notice. Consequently, with full reservation of and without prejudice to all of Mr. Spina's rights and remedies, individually and derivatively, please be advised that Mr. Spina and I will be attending the meeting along with a court reporter.

Finally, in addition to the misconduct, breaches of duty and other common law and statutory violations described in my letter of May 13th, RSE, its Putative Board members, and its shareholders constituting such Putative Board are cautioned about and directed to familiarize themselves with the provisions of the Pennsylvania Business Corporations Law and other authority implicating voting disqualification by "interested directors" and "interested shareholders". In that regard, demand is once again being made for the immediate and complete disclosure and production of all verbal and written contracts, ancillary documents, memoranda, or other evidence

Joseph K. Koury, Esq.
May 16, 2014
Page 3


of any employment relationship, consulting relationship, commission or bonus program, side agreements and/or transaction between or consideration being received, directly or indirectly, prior to, at or after the proposed closing under the Stellar Offer by Robert Hepp, Cynthia Hepp and/or Ken Philo, on the one hand, and Stellar (or any subsidiary or affiliate of Stellar), on the other hand.

Sincerely,

Henry I. Pass

HIP:smr
cc:      Thomas Spina
         Gary Stein, Esq.

ASSET PURCHASE AGREEMENT

     This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into this _____ day of _____, 20__ (the "Effective Date"), by and between Stellar Refrigeration Services ("Purchaser"), Refrigeration, Service and Engineering, Inc. ("Seller")~~, and the undersigned equity owners of Seller (collectively the "Shareholders")~~.

WITNESSETH

     WHEREAS, Seller owns and operates a business that designs, fabricates, installs and maintains industrial refrigeration systems (the "Business"); and

     WHEREAS, the Seller ~~and Shareholders, jointly and severally,~~ desires to sell and assign to Purchaser, and Purchaser desires to purchase and accept, certain assets, of the Seller, described herein, upon the terms and subject to the conditions of this Agreement.  In addition to simultaneously with the closing of the above referenced transaction, the Seller and ~~the Shareholders~~certain of its shareholders have agreed to enter into ~~certain~~ non-competition agreements for the benefit of Purchaser and its affiliates~~, all as herein described~~.

     NOW, THEREFORE, for and in consideration of the Purchase Price (as hereinafter defined), the recitals and the promises and mutual covenants, agreements, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser, intending to be legally bound, hereby agree as follows:

**ARTICLE 1**
**PURCHASE AND SALE OF ASSETS**

     1.1   **Purchased Assets**.  In consideration of the payment of $475,000.00 (the "Purchase Price") as detailed on the attached Exhibit A, B, and C, upon the terms and subject to the conditions set forth in this Agreement on the Closing Date, Seller agrees to sell, assign, transfer, convey and deliver the Purchased Assets (as defined herein) to Purchaser, and Purchaser agrees to purchase, accept, acquire and take assignment and delivery from Seller, the following assets of Seller (all of which assets are hereinafter referred to collectively as the "Purchased Assets"), subject to the exclusions set forth in Section 1.2:

     (a)   **Customers**.  Except as otherwise set forth herein. Aall customer accounts relating to the sale of products and services by the Seller in the Business, and customer lists and other prospects related to the Business of Seller (collectively, the "Customer Arrangements");

     (b)   **Vehicles:** all work vehicles described in exhibit A (the "Vehicles")

     (c)   **Equipment/Tools**.  All of the equipment, tools and machinery owned, leased or in the possession of Seller (collectively, the "Equipment", including the items specifically described in exhibit B;

> **Formatted:** Indent: Left:  0", First line:  1"

> **Comment [A1]:** Seller should require greater up-front payment and security for balance.  Where is the draft Promissory Note?  Also need Security Agreement.

(d)   **Intangibles**.  All right, title and interest of Seller in and to all goodwill, trade secrets, proprietary rights, symbols, trademarks~,~ and service marks, ~logos and trade names used in the Business, including without limitation all right title and interest in and to the fictitious name "'Refrigeration, Service and Engineering, Inc. and Industrial Refrigeration Service and & Engineering" (IRSE)" and any similar name and the right to use such names~;

(e)   **Tangible Personal Property**.  All of the furniture, office equipment, computer hardware, supplies, materials, vehicles and other items of tangible personal property of every kind owned or leased by Seller, including the items specifically described in Exhibit C (collectively, the "Tangible Personal Property");

(f)   **Lease**.   The real estate lease for ~the~ principle Office Building, a copy of which has been delivered to Purchaser, (the "Lease");   ............................

> Comment [A2]: Need to discuss assignment issues in greater detail.

(g)   **Permits**.  All permits, licenses, franchises, consents and other approvals relating to the Business (collectively, the "Permits");and

(h)   **Telephone and Fax Numbers; Domain names and websites**.  All right, title, and interest of Seller in and to the telephone, fax numbers, domain names and websites used by Seller in the conduct of the Business;

(i)   **Other Assets**.  All other tangible and intangible assets of Seller used or useful in the Business, to the extent transferable/assignable.

1.2   **Excluded Assets**.  Purchaser shall not acquire from Seller any assets other than the Purchased Assets, including specifically (i) all cash on hand and on deposit of Seller, (ii) all accounts receivable of Seller for ~services performed~Customer Arrangements, both service and construction, entered into by Seller prior to closing for which performance remains due or payment remains due, as set forth on Exhibit D hereto, as well as warranty work associated with the same, as further provided in Article 11 hereof,~and~ (iii) the books and records of Seller, ~all as listed on Schedule 1.2 attached hereto~, and (iv) non-transferrable/assignable assets of the Seller (the "Excluded Assets"). ~NA~

### ARTICLE 2
### PURCHASE PRICE PAYMENT; NO ASSUMPTION;
### EFFECTIVE TIME

2.1   **Payments**.  The Purchase Price shall be paid by Purchaser in installments as detailed on the summary page of the attached Exhibit A, B and C.   .........................

> Comment [A3]: See above comment re: the same.

2.2   **No Assumption of Indebtedness**.  Purchaser does not assume or agree to pay, perform or discharge any indebtedness or liabilities of Seller ~or the Shareholders~, and shall not be responsible for, any commitments, contracts, agreements or liabilities of Seller ~or the Shareholders~_ whatsoever, whether now existing or hereafter accruing or occurring, and Seller ~and Shareholders jointly and severally, will~shall at all times indemnify and hold Purchaser harmless from and against any claim therefore or liability arising therefrom.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller ~~and Shareholder~~ hereby ~~jointly and severally~~ represents and warrants to Purchaser as follows:

3.1     **Organization and Qualification.**  Seller is a corporation duly organized, validly existing and in good standing under the laws of Sellers state of formation and has the requisite power to carry on its business as it is now being conducted.

3.2     **Due Authorization.**  Seller has full power and authority to enter into and perform this Agreement and all other agreements and transactions contemplated hereby. The execution, delivery and performance by Seller of this Agreement has been, and the execution, delivery and performance by Seller of all other agreements and transactions contemplated hereby have been duly authorized and approved by all requisite action on the part of Seller and its ~~Shareholders~~shareholders. This Agreement has been, and the other agreements contemplated hereby, when executed, will be duly executed, delivered, and performed by Seller and, assuming the due authorization, execution and delivery hereof and thereof by the Purchaser, this Agreement constitutes and when executed, each of the other agreements contemplated hereby will constitute, a valid and binding obligation of Seller, enforceable against it in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance and similar laws affecting creditors' rights generally from time to time and to general principles of equity. Each ~~Shareholder~~ shareholder is competent, under no duress or legal restraint, and has all necessary authority to enter into this Agreement, perform such obligations hereunder and consummate the transactions contemplated hereby. All of the issued and outstanding  stock of Seller is owned of record and beneficially by the ~~Shareholders~~shareholders, free and clear of all liens, security interests and encumbrances whatsoever.

3.3     **No Violation.**  The execution, delivery and performance by Seller of this Agreement and the other agreements and transactions contemplated hereby will not cause Seller to violate any provision of its Articles of Organization, by-laws or Shareholders Agreement. Seller is not subject to or obligated under any provision of (i) any contract or other agreement; (ii) any license, franchise or permit; or (iii) any law, regulation, order, judgment or decree, which would be breached or violated or in respect of which a right of termination or acceleration or any encumbrance on any portion of the Purchased Assets would be created by their execution, delivery and performance of this Agreement or the other agreements and transactions contemplated hereby.

3.4     **Customer Arrangements.**  Seller has provided Purchaser with general terms of any and all Customer Arrangements.

3.5     **Competition.**  Seller has not entered into any agreement, now in effect, relating to the Purchased Assets and containing any prohibition or restriction of competition or solicitation of customers with any person, corporation, partnership, firm, association, or business organization, entity or enterprise.

3.6     **Condition of Equipment and Vehicles**. The Equipment and Vehicles are and will be, on the Closing Date and Effective Time, in good operating condition and repair, except for ordinary wear and tear and downtime for routine maintenance.

3.7     **Consents and Approvals of Governmental Authorities and Other Persons**. ~~No consent, approval or authorization of, or declaration, filing or registration with, any governmental or regulatory authority, any entity or any other person is required in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.  Neither Seller nor any Shareholder~~ is not in default under any applicable federal, state, or local laws, statutes, ordinances, permits, licenses, orders, approvals, variances, rules or regulations or judicial or administrative decisions which default would have an adverse effect on the Purchased Assets.  Seller shall cause to be filed with the Pennsylvania Department of Revenue and Pennsylvania Department of Labor and Industry a REV-181, Application for Tax Clearance, ten (10) or more days prior to the Closing Date.

3.8     **Litigation**.  Other than what is set forth on Exhibit E hereto, ~~(~~Tthere is no action, suit, proceeding or investigation pending or, to Seller's Knowledge, threatened against Seller at law or in equity, or before any federal, state, municipal or other governmental department, commission, board, bureau or agency, which may be expected to result in any adverse change to the Purchased Assets; ~~(b).~~ Seller is not subject to any order, judgment or decree which relates to the Purchased Assets or which would limit its ability to operate the Purchased Assets in the ordinary course; and (c).  tThere have been no incidents, accidents, occurrences, casualties, injuries, or damages which may give rise to any cause of action, claim or lawsuit against purchaser by any third party.

3.9     **No Other Agreements to Sell**.  Seller does not have any legal obligation, absolute or contingent, to any other person of firm to sell any of the Purchased Assets or to enter into any agreement with respect to the Purchased Assets.

3.10    **Solvency**.  Seller is solvent and able to pay its debts as they become due. Neither the execution of this Agreement nor the consummation of the transactions contemplated by this Agreement shall render the Seller insolvent or otherwise unable to pay its debts as they become due.  The Seller does not contemplate filing a petition in bankruptcy or for reorganization under the federal Bankruptcy Code, and, to the knowledge of the Seller, no bankruptcy or insolvency proceedings have been threatened against the Seller.

3.11    **Title.**  Seller owns the Purchased Asset free and clear of any liens, security interests, or other encumbrance.

3.12    **Material Adverse Change**.  Since December 31, 2013, there has not been any material adverse change in the business, operations, prospects, assets, results of operations or condition (financial or other) of Seller, and no event has occurred or circumstance exists that may result in such a material adverse change.

3.13   **Full Disclosure.**  No representation or warranty of Seller under this Agreement contains or will contain any untrue statement of a material fact or omits or will omit any material fact necessary to make the statements made herein not misleading. There are not material facts, which would have an adverse effect on the Purchased Assets which are known to Seller which have not been disclosed to Purchaser pursuant to this Agreement. Setter has provided to Purchaser copies of all documents listed or mentioned in the schedules hereto, all of which are true, complete and accurate copies thereof.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that as of the date hereof:

4.1   **Organization and Qualification.**  Purchaser is a corporation duly organized, validly existing and in good standing under the laws of Florida.  Purchaser has the requisite power to carry on its business as it is now being conducted.

4.2   **Due Authorization.**  Purchaser has full corporate power and authority to enter into and perform this Agreement and all other agreements and transactions contemplated hereby.  The execution, delivery and performance by Purchaser of this Agreement have been, and the execution, delivery and performance by Purchaser of all other agreements and transactions contemplated hereby have been, or prior to Closing will be, duly authorized and approved by all requisite corporate action on the part of Purchaser.  This Agreement has been, and the other agreements contemplated hereby, when executed, will be, duly executed, delivered and performed by Purchaser, and assuming the due authorization, execution and delivery hereof and thereof by the other parties hereto and thereto, this Agreement constitutes and, when executed, each of the ocher agreements contemplated hereby will constitute a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance and similar laws affecting creditor& rights generally from time to time and to general principles of equity.

4.3   **Consents; No Default.**  The execution, delivery and performance by Purchaser of this Agreement and the other agreements and transactions contemplated hereby will not cause Purchaser to violate any provision of its Certificate of Incorporation or Bylaws or result in a breach of any provision of, or constitute a default (whether upon notice or lapse of time or both) under, any mortgage, loan agreement, deed of trust, indenture, agreement or other instrument to which Purchaser is a party of by which Purchaser is bound which would have a material adverse effect on the transactions contemplated hereby.

4.4   **Laws and Governmental Orders**.  Neither the execution nor delivery by Purchaser of this Agreement or any other agreement contemplated hereby or the performance of the transactions contemplated hereby will violate any applicable local, state or federal law or regulation which would have a material adverse effect on the transactions contemplated hereby.  Purchaser is not a party or subject to or bound by any

law, judgment, order, writ, injunction, ruling or decree of any jurisdiction, court or governmental body that is likely to adversely affect in any manner the performance by Purchaser of this Agreement or any other agreements or transactions contemplated hereby.

**ARTICLE 5**
**CONDUCT OF BUSINESS PRIOR TO CLOSING**

Between the date hereof and the Closing Date, Seller shall maintain the operation of its Business pending Closing and in so doing shall; (i) continue its Business in the ordinary and usual course; (ii) maintain and repair all of the Purchased Assets in accordance with past practice; (iii) use its Best Efforts to preserve Seller's relationship with suppliers, customers, brokers, agents and others; (iv) comply with all applicable laws, rules and regulations of each federal, state or municipal authority having jurisdiction over the Purchased Assets; (v) operate its Business in accordance with past practices; (vi) maintain insurance in the ordinary course of business with respect to the Equipment until the close of business three business days after the Closing Date; (vii) promptly notify purchaser of any information, circumstance or event which could cause any of Seller's representations and warranties herein to not be true and correct as of the time of such event; and (viii) not modify, amend or terminate any of the Customer Arrangements.

**ARTICLE 6**
**OBLIGATIONS PRIOR TO, AS OF AND SUBSEQUENT TO CLOSING**

The parties agree that, prior to Closing, and, where specifically indicated below, subsequent to Closing:

6.1     **Consents: Additional Agreements**.  Purchaser and Seller agree to cooperate and promptly take, or cause to be taken, all action, and to cooperate and promptly do, or cause to be done, all things reasonably necessary, proper or advisable to consummate and make effective as promptly as practicable the transactions contemplated by this Agreement, including; (i) the removal of any legal impediment to the consummation or effectiveness of such transactions; and (ii) the obtaining of all necessary and material waivers, consents and approvals of all third parties and governmental bodies, and the making of all necessary filings.

6.2     **Confidentiality**.  Purchaser and Seller will hold, and will cause their respective officers, agents and employees to hold, in confidence, and not disclose to others, the terms of this Agreement, the transactions contemplated hereby, all plans, documents, contracts, records, data analysis, compilations, forecasts, and studies and other informational material received or prepared by any of them with respect to the Purchased Assets (collectively the "Information") except; (i) to the extent that such Information (x) is otherwise available from third persons without restrictions on its further use or disclosure or (y) is required by order of any Governmental Body, any law or any reporting obligation of Purchaser or Seller; (ii) to the extent such Information is or becomes publicly known other than through a violation of this Section 6.2 by the party in question; or (iii) to the extent such Information is provided to persons who are assisting

in the consummation of the transactions contemplated hereby, or is required to be given to such third party in order to obtain any consents, approval, authorizations, disclosures or assignments contemplated by this Agreement (including, without limitation, the disclosure to representatives or employees of any Governmental Body). Upon termination of this Agreement pursuant to Section 10, Purchaser shall promptly return or destroy all Information without retaining any copies or extracts thereof within ten (10) Business Days of such termination. Purchaser shall use the Information for the solo purpose of evaluating the proposed transaction.

6.3   **Assignment of Customer Arrangements.** At Closing, Purchaser and Seller shall enter into an Assignment of Customer Arrangements, a Bill of Sale and Assignment for the Lease, an Assignment and Assumption of Lease and such other deeds, bills of sale, assignments, certificates of title, documents and other instruments of transfer and conveyance as may reasonably be requested by Purchaser, each in form and substance satisfactory to Purchaser and executed by Seller.

> **Comment [A4]:** Where are these documents in draft for Seller's review.

6.4   **Seller's Obligation to Provide Customer Information to Purchaser.** Seller acknowledges that Seller maintains certain electronic data files that contain information regarding the customers served by Seller pursuant to the Customer Arrangements.. Seller further acknowledges that such electronic data files are included in the Purchased Assets and shall be delivered at Closing to Purchaser by electronic or digital transmission.

## ARTICLE 7
## CONDITIONS TO SELLER'S OBLIGATIONS

Each and every obligation of Seller under this Agreement to be performed at or before Closing shall be subject to the satisfaction, at or prior to Closing, of the following conditions:

7.1   **Representations and Warranties True.** The representations and warranties made by Purchaser in this Agreement shall be true and accurate in all material respects as of the date when made and at and as of Closing. Purchaser shall have delivered to Seller a certificate dated as of the Closing Date to that effect duly executed by an authorized signatory.

7.2   **Performance of Covenants.** Purchaser shall have performed and complied in all material respects with each and every covenant, agreement and condition requited by this Agreement to be performed or complied with by theirs prior to or on the Closing Date, and Purchaser shall have delivered to Seller a certificate dated the Closing Date to that effect duly executed by an authorized signatory.

7.3   **No Governmental or Other Proceeding or Litigation.** No order of any court, or administrative agency shall be in effect or threatened which restrains or prohibits the transactions contemplated hereby.

## ARTICLE 8
## CONDITIONS TO PURCHASER'S OBLIGATIONS

Each and every obligation of Purchaser under this Agreement to be performed at or before Closing shall be subject to the satisfaction, at or before Closing, of the following conditions:

8.1    **Representations and Warranties True.**    The representations and warranties made by Seller and Shareholders shall be true and accurate in all material respects as of the date when made and at and as of Closing.  Seller and Shareholders shall have delivered to Purchaser a certificate dated as of the Closing Date to that effect duly executed by Seller and Shareholders.

8.2    **Performance of Covenants.**    Seller and Shareholders shall have performed and complied in all material respects with each and every covenant, agreement and condition required to be performed or complied with by them prior to or on the Closing Date, and Seller and Shareholders shall have delivered to Purchaser a certificate dated the Closing Date to that effect duly executed by Seller and Shareholders.

8.3    **No Governmental or Other Proceeding or Litigation.**    No action, suit, proceeding or order of any Governmental Body, pertaining to the transactions contemplated hereby or the consummation hereof, shall have been instituted or threatened on or before the Closing Date.

8.4    **Approvals and Consents.**    All necessary or appropriate approvals, or the absence of disapprovals within applicable time periods, including Purchaser's board of directors, and Shareholdersshareholders, public authorities, federal, state, foreign or local law (or exemptions from the requirements therefore), shall have been obtained, to the satisfaction or Purchaser.  All consents, waivers and approvals necessary for the transfer of the Purchased Assets shall have been obtained by Seller.

8.5    **Material Adverse Change.**    At Closing, there shall have been no material adverse change in the Purchased Assets.

8.6    **Inspection.**    Prior to the Closing, Purchaser shall have the right to inspect the Equipment and Vehicles, premises, business operation and the books and records of Seller.  Purchaser's obligation to close the transaction contemplated hereby is contingent on Purchaser shall not have discovered any damage to or defect in any of the Equipment or Vehicles or any change in the condition thereof other than ordinary wear and tear which, if not repaired, would materially interfere with the use of such Equipment and Vehicles; and

## ARTICLE 9
## CLOSING

9.1    **Time and Place of Closing.**    Consummation of the transactions contemplated by this Agreement shall be held at the office of Purchaser, on or before May 16, 2014 (the "Closing Date").

9.2    **Closing.** The actual payment of the Purchase Price and the actual delivery of the documents provided herein is referred to as the "Closing." In the event that the Closing shall occur, the Closing shall be effective, and the title to the Purchased Assets being transferred to Purchaser in accordance with the terms of this Agreement shall pass to Purchaser, as of the Closing unless otherwise provided herein, with risk of loss for the Purchased Assets being borne by Seller, except as otherwise provided herein, until the conclusion of the Closing, after which risk of loss shall be borne by Purchaser.

9.3    **Simultaneous Delivery.** Except as otherwise provided herein, all payments, documents and instruments to be delivered on the Closing Date pursuant to this Agreement shall be regarded as delivered simultaneously, and no document or instrument shall be regarded as having been delivered until all documents and instruments being delivered on the Closing Date have been delivered.

**ARTICLE 10**
**TERMINATION PRIOR TO CLOSING**

Anything contained in this Agreement to the contrary notwithstanding this Agreement may be terminated at any time as follows:

      (a)    By mutual written consent of Seller and Purchaser; ~~and~~or

  ~~(a)~~(b)  By either Purchaser or Seller, if the conditions to such party's obligations hereunder have not been satisfied on or before the Closing Date~~; or~~.

In the event of the termination of this Agreement pursuant to the provisions of this Article 10, no party shall have any liability of any nature whatsoever to the other under this Agreement, including liability for damages, unless either party is in default under its obligations hereunder, in which event the party in default shall be liable to the other party for such default.

**ARTICLE 11**

**POST-CLOSING OPERATIONS OF SELLER**

11.1    **Existing Service Contracts.** To the extent post-Closing performance by Seller remains due with regard to those Customer Arrangements included within the Excluded Assets as set forth on Exhibit D hereto, then Seller shall subcontract personnel and equipment from Purchaser on an independent contractor basis as necessary, upon terms and at a rate agreeable to both Purchaser and Seller for the performance of the same. The foregoing provision shall not apply to those Customer Arrangements included within the Excluded Assets which are capable of being assigned to Buyer post-Closing with the consent of the party contracting for the services.

11.2    **Existing Construction Contracts.** To the extent post-Closing performance by Seller remains due with regard to those Customer Arrangements included within the Excluded Assets as set forth on Exhibit D hereto, then Seller shall complete the performance of said construction Customer Arrangements prior to October 1, 2014

with Seller collecting and retaining all accounts receivable associated therewith.  To the extent existing construction Customer Arrangements are incapable of complete performance prior to October 1, 2014, or, should warranty work remain due after October 1, 2014 with respect to previously completed pre-existing construction Customer Arrangements, then Purchaser shall subcontract personnel from Seller on an independent contractor basis as necessary, upon terms and at a rate agreeable to both Buyer and Seller for the performance of the same, and Seller shall collect and retain all accounts receivable associated therewith.

11.3   **Post-Closing Construction Contracts Obtained by Buyer.**  Purchaser and Seller agree that for any construction contract obtained by Purchaser within Seller's pre-existing market area during the period of time occurring between June 1, 2014 and September 30, 2014, then Purchaser shall subcontract personnel from Seller on an independent contractor basis as necessary, upon terms and at a rate agreeable to both Buyer and Seller for the performance of the same, and Purchaser shall collect and retain all accounts receivable associated therewith.

## ~~ARTICLE 11~~ ARTICLE 12
## INDEMNIFICATION AND ARBITRATION

~~11.1~~ 12.1   **Seller's Indemnity.**  Seller ~~and Shareholders jointly and severally~~ shall indemnify, defend, and hold Purchaser harmless from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorney's fees (all the foregoing are referred to as "Expenses"), that Purchaser may incur or suffer which arise out of, result from, or relate to any material breach of, or material failure by Seller ~~or Shareholders~~ to perform any of ~~their~~ its representations, warranties, covenants or agreements in this Agreement or in any schedule, certificate, exhibit, or other instrument furnished or to be furnished by Seller under this Agreement.

12.2   **Purchaser's Indemnity.**  Purchaser shall indemnify, defend, and hold Seller harmless from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorney's fees (all the foregoing are referred to as "Expenses"), that Seller may incur or suffer which arise out of, result from, or relate to any material breach of, or material failure by Purchaser to perform any of its representations, covenants or agreements in this Agreement or in any schedule, certificate, exhibit, or other instrument furnished or to be furnished by Seller under this Agreement.

~~11.2   Purchaser hereby agrees to indemnify and hold Seller harmless from and against and in respect of any and all claims, losses, expenses, costs, obligations and liabilities, including but not limited to reasonable attorneys fees, which Seller may incur by reason of Purchaser's breach of or failure to perform any of its representations, warranties, agreements or covenants in this Agreement.~~

~~11.3~~ 12.3   **Arbitration.**  All unresolved disputes and controversies arising out of this Agreement shall be settled by binding arbitration to be held in Jacksonville,

Florida and administered by the American Arbitration Association in accordance with its then current Commercial Arbitration Rules. Any judgment or award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. Either party shall have the right to demand arbitration of any dispute by written notice to the other party, and each party expressly waives any and all rights it may now or hereafter have to commence any action other than arbitration against the other party arising from, or as the result of, or in any way connected with, any such dispute, except that judgment on any such arbitration award may be entered and enforced by a court of competent jurisdiction.

ARTICLE 12ARTICLE 13
**DEFINITIONS**

For purposes of this Agreement, the following terms have the meanings specified below:

(a)  *"Best Efforts"* - the efforts that a reasonably prudent person desirous of expeditiously achieving a result would use in similar circumstances.

(b) ,

(a)(b)  *"Governmental Body"* - any federal, state, county or municipal court, agency, board, legislature, commission or other legislative, judicial, administrative or regulatory body.

(b)(c)  *"Knowledge"* - an individual will be deemed to have *"Knowledge"* of a particular fact or other matter if: (i) such individual is actually aware of such fact or other matter; or (ii) a reasonably prudent individual could be expected to discover or otherwise become aware of such fact or other matter in the course of conducting a reasonably comprehensive investigation concerning the existence of such fact or other matter. An entity (other than an individual) will be deemed to have "knowledge" of a particular fact or other matter if any individual who is serving as a director, managerial or professional employee, officer, partner, executor or trustee (or in any similar capacity) of such entity has, or at any time had, Knowledge of such fact or other matter.

ARTICLE 13ARTICLE 14
**MISCELLANEOUS PROVISIONS**

13.114.1  **Further Assurance and Assistance**. Seller and Shareholders agrees that after the Closing Date they it will, from time to time, upon the reasonable request of Purchaser, execute, acknowledge and deliver in paper form any instrument of conveyance or further assurance reasonably necessary or desirable to transfer to Purchaser the interest in the Purchased Assets being transferred to Purchaser in accordance with the terms of this Agreement.

13.214.2  **Amendment and Modifications**. This Agreement may be amended, modified or supplemented only by mutual written consent of the parties hereto.

13.314.3    **Waiver of Compliance**.  The failure by any party at any time to require performance or any provision hereof shall not affect its right later to require such performance. No waiver in any one or more instances shall (except as stated therein) be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any condition or breach of any other term, covenant, representation or warranty.

13.414.4    **Expenses**.  All costs and expenses incurred in connection with this Agreement and the transaction contemplated hereby shall be paid by the party incurring such expenses.

13.514.5    **Notices**.  All notices, requests, demands or other communications required or permitted by this Agreement shall be in writing and effective when received, and delivery shall be made personally or by registered or certified mail, return receipt requested, postage prepaid, or overnight courier or confirmed facsimile transmission, addressed as follows:

(a)    If to PurchaserSeller and/or Shareholders:

·····················································   ┌──────────────────────────────┐
│ **Comment [A5]:** Notice provisions need to be │
│ completed.                                     │
└──────────────────────────────┘

_____Stellar Refrigerated Services_____

_____
Fax: _____
Attn: __Mike Santarone_____

(b)    If to PurchaserSeller:

__IRSE_____

_____
Fax: _____
Attn: ___Bob Hepp_____

or to such other addresses as may be specified pursuant to notice given by either party in accordance with the provision of this Section 13.5.

13.614.6    **Assignability of Agreement**.  This Agreement may not be assigned in whole or in part by either party without the prior written consent of the other party except that this Agreement may be assigned to any affiliate of Purchaser.

13.714.7    **Choice of Law**.  This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with and governed by the laws of the State of Florida, without regard to its conflicts of laws principles.

13.814.8    **Counterparts**.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute on and the same instrument.

13.914.9   **Headings.**   The headings of the sections and articles of this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

13.1014.10   **Survival.**   All representations, warranties, covenants, and obligations in this Agreement and any other certificate or document delivered pursuant to this Agreement will survive the Closing for a period of three (3) years unless otherwise stated herein.  The right to indemnification, payment of damages or other remedy based on such representations, warranties, covenants, and obligations will not be affected by any investigation conducted with respect to, or any Knowledge acquired (or capable of being acquired) at any time, whether before or after the execution and delivery of this Agreement or the Closing Date, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, or on the performance of or compliance with any covenant or obligation, will not affect the right to indemnification, payment of damages, or other remedy based on such representations, warranties, covenants, and obligations.

13.1114.11   **Entire Agreement.**   This Agreement, including the agreements referred to herein, the schedules and exhibits attached hereto and other documents referred to herein which form a part hereof, contains the entire understanding of the parties hereto in respect of the subject matter contained herein.  There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to herein.  This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

(THE SIGNATURE PAGE FOLLOWS.)

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed in multiple original counterparts as of the date first written above.

**SELLER:** _____

By: Refrigeration, Service and Engineering, Inc.
Name: _____
Its: _____

**SHAREHOLDERS:** ~~Bob Hepp~~

~~Thomas Spina~~

~~Ken Philo~~

~~Cindy Hepp~~

**PURCHASER:** _____

By: Stellar Refrigeration Services _____
Name: _____
Its: _____

**Exhibit A**

Vehicles


**Exhibit B**

Equipment


**Exhibit C**

**Tangible Personal Property**


**Exhibit D**

**Excluded Customer Arrangements**

Formatted: Font: Bold


**Exhibit E**

*FEI Company v. Refrigeration, Service and Engineering, Inc.,* Court of Common Pleas, Dauphin County,

Pennsylvania

Formatted: Font: Bold, Italic

Formatted: Font: Bold


JAX\1852723_1                          -15-