IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SPINA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  14-4230 |
| | : | |
| REFRIGERATION, SERVICE AND ENGINEERING, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                             **OCTOBER  7,  2014**

Presently before this Court is Plaintiff, Thomas Spina's, "Motion to Enforce Business Rights Under Section 1508 of the Pennsylvania Business Corporation Law," and Defendant, Refrigeration Service and Engineering, Inc.'s, Response in Opposition.  For the reasons set forth below, Plaintiff's Motion is denied.

## I.      FACTUAL BACKGROUND

### A.  The Underlying Litigation

On August 11, 2014, Plaintiff, Thomas Spina ("Plaintiff"), filed an eighteen (18) count Amended Complaint against Defendant, Refrigeration Service and Engineering, Inc. ("Defendant")[1],  and Defendants Robert E. Hepp ("Hepp"), Cynthia A. Fitzgerald-Hepp ("Fitzgerald-Hepp"), and Kenneth C. Philo ("Philo") (collectively, the "Shareholder

---

[1] Defendant is a Pennsylvania corporation with its principle place of business in Pottstown, Pennsylvania. Am. Compl. ¶ 2.

Defendants"), for alleged breaches of statutory and common law.  See Am. Compl.  The catalyst for Plaintiff's claims is a merger agreement entered into between Industrial Refrigeration and Engineering, Inc. ("IRE") and Defendant on December 29, 2011, which subsumed IRE into Defendant.  Am. Compl. ¶ 11.  At the time of the merger, Plaintiff possessed a thirty-three-and-one-third percent (33 1/3%) ownership interest in IRE.  Id.  After the completion of the merger, Plaintiff acquired a thirty percent (30%) ownership stake in Defendant.  Id. ¶ 46.  The Shareholder Defendants possessed the remaining ownership interests in Defendant.  Id. ¶ 66.

At some point on or before May 4, 2014, Hepp and Fitzgerald-Hepp reached an agreement in principle (the "Sale of Assets Agreement") with Stellar Refrigeration Services, Inc. ("Stellar"), of Jacksonville, Florida, to sell all of Defendant's assets, excluding cash and accounts receivable to Stellar for a sum of $475,000, payable over a period of three years.  Id. ¶ 51.  Although, this Sale of Assets Agreement was never consummated, it forms the basis of Plaintiff's claims and was a source of major contention between Plaintiff and Shareholder Defendants.[2]  Id.  Generally speaking, Plaintiff believes that the Shareholder Defendants have promoted their own interests at the expense of his interests.  (Pl.'s Mot. for Jud'l Supervision.) The Shareholder Defendants reject this contention and assert that Plaintiff's real motive is to exact retribution against his former business partners for leaving him, and to receive thirty percent (30%) of the net liquidation proceeds without paying for a thirty percent (30%) interest in RSE.  (Defs.' Resp. in Opp'n, 2.)

---

[2]The shareholders of Defendant have since agreed to commence a voluntary dissolution and liquidation of the assets of Defendant.  Am Compl. ¶ 75.  Plaintiff voted against this course of action.  Id. ¶ 76.  On September 17, 2014, the Court denied Plaintiff's Motion seeking either judicial supervision of the dissolution or the appointment of a receiver or custodian.  See Spina v. Refrigeration, Service and Engineering, Inc., No. 14-4230, 2014 WL 4632427, at *3 (E.D. Pa. Sept. 17, 2014).

**B. Plaintiff's Instant Motion**

On June 13, 2014, Plaintiff sent Defendant a letter demanding to exercise his right to inspect the books and records of Defendant in accordance with the procedures of the Pennsylvania Business Corporations Law, 15 Pa.C.S. § 1101, *et seq*. (Pl.'s Mot. for Inspect. of Docs. ¶ 2.) Plaintiff asserted the inspection was necessary for the following purposes:

1. To determine the propriety, nature and extent of RSE's (Defendant) expenditures since December 31, 2011, that impact my rights as a shareholder of RSE including, without limitation, the value of my interest in RSE and entitlement to any distributions of RSE's profits accruing since December 31, 2011;
2. To determine the fair market value of my 30% shareholder interest in RSE;
3. To determine the terms, conditions, fairness, propriety and validity of the Putative Stellar Transaction and its impact on my rights as a shareholder of RSE;
4. To determine the scope and magnitude of any self-dealing, conflicts of interest, breaches of fiduciary duty, fraud, conversion and other misconduct engaged in by Robert Hepp, Cynthia Hepp and/or Kenneth Philo regarding RSE's operations and/or the Putative Stellar Transaction that impact or have impacted my rights as a shareholder of RSE including, without limitation, the value of my interest in RSE and entitlement to any distributions of RSE's profits since December 31, 2011; and
5. Such other purposes within the purview of Section 1508 of the Business Corporation Law and applicable law.

(Id. ¶ 5.) The documents sought by Plaintiff include:

1. All original minutes, resolutions, notices, consents in writing, agendas, proposals or other documents relating to any special, regular or annual meeting of RSE's Board of Directors since December 31, 2011;
2. All original minutes, resolutions, notices, consents in writing, agendas, proposals or other documents relating to any special, regular or annual meeting of RSE's Shareholders since December 31, 2011;
3. The original by-laws of RSE and any amendment(s) thereto;
4. RSE's Share Register;
5. All documents that evidence or relate to RSE's evaluation, analysis or response to my offer to purchase RSE's assets for $500,000 pursuant to my counsel's letters to RSE's counsel dated May 14, 2014, May 16, 2014 and May 30, 2014;
6. RSE's bank statements and cancelled checks since December 31, 2011;

7. Credit card statements since December 31, 2011, for accounts in the name of RSE, Robert Hepp II, Cynthia Hepp or Kenneth Philo for purchases of goods or services paid by RSE, either directly or through reimbursement;
8. Invoices, contracts, work orders or other documents (including, without limitation, cancelled checks and credit card statements) relating to any services provided by or materials purchased from Dellose Construction Services, Inc. on behalf of RSE or any of its shareholders;
9. Invoices, contracts or other documents (including, without limitation, cancelled checks, credit card statements and certificates of title) relating to (a) the purchase of a Lincoln automobile with RSE funds on or around April 11, 2014, and (b) the recent sale of RSE's blue Ford pickup truck.
10. Executed copies of that certain Asset Purchase Agreement ("Agreement") between RSE and Stellar Refrigeration Services, Inc. ("Putative Stellar Transaction"), together with (a) all exhibits to that Agreement; (b) all documents referenced in the Agreement for execution before, at or after the Closing under the Agreement; (c) all employment agreements, consulting agreements or other contracts either entered into or to be entered into by any RSE shareholder and Stellar Refrigeration Services, Inc. (or any affiliate thereof); (d) any other contracts arising out of or relating to the Agreement, or (e) any amendment(s) to the foregoing.
11. Copies of all Pennsylvania Exemption Certificates ("Exemption Certificates") delivered by RSE since January 1, 2012, to any person, on Form REV-1220 or otherwise; copies of documents identifying the persons or entities that received Exemption Certificates from RSE since January 1, 2012; and, as applicable, copies of applications for or grants of an Exemption Number by the Pennsylvania Department of Revenue for purposes of application of the Pennsylvania Sales Tax, 72 P.S. Sec. 7201, et seq.
12. Engagement letters or agreements with, and invoices or statements from, any law firm or lawyer where RSE has agreed to pay legal fees for any matter involving RSE and/or any of its shareholders since December 31, 2011, as permissibly redacted under any bona fide privilege.
13. All Records described in 1-8 above in existence since January 1, 2008, for the corporation formerly known as Industrial Refrigeration Services and Engineering, Inc. ("IRSE") prior to its merger into RSE on December 31, 2011, which Records RSE acquired by operation of law.

(Id. ¶ 8.)  In an email dated June 24, 2014, counsel for Defendant informed Plaintiff that it would not be producing any of the documents sought by Plaintiff.  (Id. ¶ 6.)

On July 30, 2014, Plaintiff filed a "Motion to Enforce Business Rights Under Section 1508 of the Pennsylvania Business Corporation Law" ("Plaintiff's Motion for Inspection of Documents"), which seeks judicial intervention authorizing Plaintiff to inspect the books and records of Defendant. (Id.) Plaintiff cites to Section 1508(c) of the Pennsylvania Business Corporation Law, 15 Pa.C.S. § 1508(c), as the legal authorization for this action.[3] (Id. ¶ 7.) Defendant filed a Response in Opposition on August 13, 2014. (See Def.'s Resp. in Opp'n.) In this Response, Defendant argues that the automatic stay provision of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), precludes Plaintiffs Motion. (Id. at 1.)

Although the parties engage in well-reasoned arguments over whether Plaintiff has the right to inspect certain books and records possessed by Defendant under Pennsylvania law, we do not find this issue determinative in this case. Instead, since Defendant has filed a Motion to Dismiss prior to the adjudication of the instant Motion, we agree with Defendant (for reasons stated later in this Opinion) that the relief sought by Plaintiff is governed by the PSLRA. See 15 U.S.C. § 78u-4(b)(3)(B).

**II.   STANDARD OF LAW**

Congress enacted the PSLRA with an eye toward curbing abusive securities litigation practices.[4] See H.R. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.

---

[3] In relevant part 15 Pa.C.S. § 1508(c) states that "if the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a shareholder . . . the shareholder may apply to the court for an order to compel the inspection." 15 Pa.C.S. § 1508(c). Upon such Motion, "the court may summarily order the corporation to permit the shareholder to inspect the share register and the other books and records of the corporation and to make copies or extracts therefrom." Id. "Where the shareholder seeks to inspect the books and records of the corporation . . . he shall first establish: (1) that he has complied with the provisions of this section respecting the form and manner of making demand for inspection of the document, and, (2) that the inspection he seeks is for a proper purpose." Id.

[4] Specifically, Congress focused on the following abusive practices: (1) the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price,

One of the chief concerns addressed in the PSLRA was the plaintiff's tactic of utilizing discovery as a "fishing expedition" to find some claim not alleged in the complaint or to impose high discovery costs in an effort to bludgeon the defendant into settling the case.  See Id. at 736; see also In re WorldCom Sec. Litig., 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).  In order to prevent the filing of frivolous securities suits and protect against the excessive costs and burdens of discovery, Congress incorporated within the PSLRA an automatic stay provision which prohibits "all discovery" during the "pendency of any motion to dismiss."  See 15 U.S.C. § 78u-4(b)(3)(B); see also In re Heckmann Corp. Sec. Litig., No. 10-378, 2011 WL 10636718, at *3 (D. Del. Feb. 28, 2011).  This provision enables the court to determine the legal sufficiency of the complaint before authorizing discovery, thereby eliminating the abusive practices.  See S. Rep. No. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693.

The automatic stay provision is not an absolute bar.  Under the PSLRA, the stay will be lifted if the Court finds, by motion of any party, that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  Bypassing the stay under these exceptions requires a showing of "exceptional circumstances," which is a high standard.  In re Heckmann Corp. Sec. Litig., 2011 WL 10636718, at *3; see also Oswell v. Morgan Stanley Dean Witter & Co., Inc., 507 F. Supp. 2d 484, 492 (D.N.J. 2007) (describing "exceptional circumstances" as a "high standard" in context of Rule 11 sanctions).  Courts have described undue prejudice somewhat ambiguously as an "improper or unfair treatment amounting to something less than irreparable harm."  Botton v. Ness Technologies

---

without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action; (2) the targeting of deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance, without regard to their actual culpability; (3) the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle; and (4) the manipulation by class action lawyers of the clients whom they purportedly represent.  H.R. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.

Inc., No. 11-3950, 2011 WL 3438705, at *1 (D.N.J. Aug. 4, 2011) (citing Nichting v. DPL Inc., No. 11–141, 2011 WL 2892945, at *3 (S.D. Ohio July 15, 2011)).

### III. DISCUSSION

#### A. Application of the Automatic Stay Provision of the Private Securities Litigation Reform Act

Since Plaintiff has raised claims for violations of federal securities laws and Defendant has moved to dismiss, Defendant argues that the automatic stay provision of the PLSRA is implicated and bars Plaintiff's request for inspection. (Id.) Defendant characterizes the instant Motion as a "thinly veiled attempt to avoid the automatic stay of discovery mandated by the PLSRA." (Def.'s Resp. in Opp'n, 1.)

In contrast, Plaintiff contends that the automatic stay provision is not implicated because "none of the documents sought . . . relate to Plaintiff's pending securities claims (all of which currently relate to conduct by individual defendants in 2011), nor will such documents bear directly on the additional securities claims that Plaintiff intends to present by way of amendment to his Complaint." (Pl.'s Mem. of Law in Supp. of Mot. for Inspect. of Docs., 8.) Plaintiff cites to Cohen v. El Paso Corp., No. 551-N, 2004 WL 23400436 (Del. Ch. Oct. 18, 2004), in support of his contention. In Cohen, the Court of Chancery of Delaware held that the automatic stay provision did not preclude a shareholder, who is not a party in a separate federal securities action against the defendant corporation, from inspecting the corporation's books and records pursuant to a state statute. Cohen, 2004 WL 23400436, at *3-4.

We do not agree that Cohen compels a finding for Plaintiff. First, Cohen involved a state court motion separate from an ongoing federal securities action, and the plaintiff was not a party to the federal action. Id. at *1. Second, the plaintiff in Cohen did not assert any claims for securities violations. Id. Rather, his action was filed solely in order to "investigate waste and

mismanagement" by the defendant corporation. Id. at *2. Third, the plaintiff agreed not to share the information obtained through the Order with the parties in the federal litigation. Id. Finally, although plaintiff's motion was granted by the state court, it was later stayed by the federal court hearing the federal securities action.[5] See City of Austin Police Retirement System v. ITT Educational Services, Inc., No. 04-380, 2005 WL 280345, at *8 (S.D. Ind. Feb. 2, 2005) (citing Wyatt v. El Paso Corp., No. H-02-2717 (S.D. Tex. Dec. 8, 2004)).

In consideration of these distinctions, we find Cohen to be factually and legally inapposite to this litigation. Here, Plaintiff raises state law and federal securities law claims in the same litigation before this Court. Although Plaintiff professes that none of the documents sought in the instant Motion pertain to the federal securities claims, the interrelatedness of the federal and pendant state claims evidence that any discovery sought on the state claims would most likely be relevant to the federal securities claims.[6] See Winer Family Trust v. Queen, No. 03-4318, 2004 WL 350181, at *3 (E.D. Pa. Feb. 6, 2004)(denying discovery request for pendant state law claims where it would likely lead to information relevant to federal securities claims). For this reason, we join the mass of courts that have held that the automatic stay provision in the PSLRA applies to pendant state law claims. See e.g. In re Smith Barney Transfer Agent Litig., No. 05-7583, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006); Winer Family Trust, 2004 WL 350181, at *2; Riggs v. Termeer, No. 03-4014, 2003 WL 21345183 at *1 (S.D.N.Y. June 9, 2003); Sarantakis v. Gruttaduaria, No. 02-1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5,

---

[5] Although Defendants stated that the state court litigation was ultimately stayed under 15 U.S.C. § 78u-4(b)(3)(B), the order of the federal court is unclear as to the grounds for the stay. See City of Austin Police Retirement Sys., 2005 WL 280345, at *8 (stating the stay order was only one-line and did not explicitly cite the legal support for such action).

[6] It is evident from the self-declared purposes provided by Plaintiff for seeking inspection and the nature of the documents that the information sought would have relevant implications on the federal securities claims.

2002); Angell Invs., L.L.C. v. Purizer Corp., No. 01-6359, 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001).  In reaching this holding, we agree with the United States Court of Appeals for the Ninth Circuit that "Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims." SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal., 189 F.3d 909, 913 n.1 (9th Cir. 1999).  Accordingly, we reject Plaintiff's attempt at making an "end run" around the PSLRA, and find that the automatic stay provision bars the instant Motion unless Plaintiff can demonstrate otherwise.  See Angell Invs., L.L.C., 2001 WL 1345996, at *2 (stating that allowing discovery on state law claims would be an impermissible "end run" around the PSLRA).

### B. Lifting the Automatic Stay of Discovery

In the event that a motion to dismiss was filed prior to the adjudication of the instant Motion, Plaintiff requests that the Motion be treated as one for relief from the automatic stay on the grounds of undue prejudice.  (Pl.'s Memo. of Law in Supp. of Mot. for Inspect. of Docs., 9.)  Since Defendants have filed a Motion to Dismiss prior to the adjudication of Plaintiff's Motion, we convert the instant Motion into one for modification of the automatic stay provision of the PSLRA.

There are two prerequisites to Plaintiff obtaining relief from the stay of discovery.  First, the discovery requested by Plaintiff must be "particularized."  15 U.S.C. § 78u-4(b)(3)(B).  Second, Plaintiff must demonstrate that he will suffer "undue prejudice" absent the "particularized discovery."  Id.  Since we find the issue of undue prejudice to be determinative, we focus solely on this prong.

The burden of establishing undue prejudice lies with Plaintiff to show that "exceptional circumstances" exist, which warrant relief from the stay.  Botton, 2011 WL 3438705, at *1; In re Heckmann Corp. Sec. Litig., 2011 WL 10636718, at *3.  Although Plaintiff anticipated the likely invocation of the automatic stay provision of the PLSRA, he neglected to provide any judicial precedent or legal analysis other than the perfunctory statement that the result of the stay would be "undue prejudice."  (Pl.'s Memo. of Law in Supp. of Mot. for Inspect. of Docs., 8.)  In full, Plaintiff's argument contends that "undue prejudice" would result "were the stay provisions of the PSLRA construed to cut off Plaintiff's substantive state-law rights, as a shareholder, to pursue a demand for documents."  (Id.)  In consideration of this unsupported legal conclusion, it is clear that Plaintiff has not demonstrated "improper or unfair treatment amounting to something less than irreparable harm."  Botton, 2011 WL 3438705, at *1.  Consequently, we find that Plaintiff has failed to show the "exceptional circumstances" necessary to circumvent the invocation of the automatic stay provision of the PSLRA.  See 15 U.S.C. § 78u-4(b)(3)(B).

## IV.     CONCLUSION

"Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities . . . actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint."  In re WorldCom Sec. Litig., 234 F. Supp. 2d at 305.  In doing so, Congress also created an avenue to sidestep the statutorily mandated freeze of discovery in two narrow circumstances:  in order to preserve evidence or to prevent undue prejudice.  See 15 U.S.C. § 78u-4(b)(3)(B).  Plaintiff claims "undue prejudice;" however, he has failed to provide any support for this bare assertion.  Consequently, Plaintiff's Motion is denied.

An appropriate Order follows.